**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

--------------------------------X

GRACIELA DELA TORRE,            Case No.: 1:25-cv-01483

           Plaintiff,

       v.

DAVIES LIFE & HEALTH, INC., et al

           Defendant.

--------------------------------X

**NIPPON LIFE INSURANCE COMPANY OF AMERICA'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SANCTIONS**

I.    PRELIMINARY STATEMENT

      Defendant, NIPPON LIFE INSURANCE COMPANY OF AMERICA (hereinafter referred to as the "DEFENDANT" or "NIPPON"), submits this Response in opposition to the Plaintiff, GRACIELA DELA TORRE's (hereinafter referred to as "PLAINTIFF" or "DELA TORRE"), motion for sanctions pursuant to Federal Rule of Civil Procedures (FRCP) Rule 11. PLAINTIFF seeks sanctions against NIPPON's legal counsel, Justin Wax Jacobs, alleging – without evidence – that he knowingly submitted a false declaration by Junko Inaga, in which she attested to having mailed a demand for arbitration to the PLAINTIFF on January 29, 2025. A copy of Ms. Inaga's declaration is reattached hereto as Exhibit A. In the alternative, PLAINTIFF alleges, again without evidentiary support, that Justin Wax Jacobs himself mailed the demand. PLAINTIFF's motion is both procedurally improper and substantively meritless.

      PLAINTIFF's motion for sanctions is procedurally improper since the PLAINTIFF failed to serve NIPPON, in accordance with FRCP Rule 11(c)(2)'s safe harbor provision, with the subject motion for sanctions 21 days prior to filing and presenting the motion to the Court. Additionally, PLAINTIFF's

1

allegations within the motion against NIPPON are baseless and simply untrue. Junko Inaga did in fact mail the demand for arbitration to the PLAINTIFF on January 29, 2025. And, despite PLAINTIFF's continued protestations otherwise, the PLAINTIFF received the demand for arbitration – by mail – on January 30, 2025.

Therefore, PLAINTIFF's motion for sanctions should be denied with prejudice.

## II. FACTS

On January 2, 2024, PLAINTIFF and NIPPON entered into a settlement agreement, whereby the PLAINTIFF agreed to dismiss her lawsuit against NIPPON. As such, the parties submitted a joint stipulation to dismiss case 1:22-cv-07059 with prejudice on January 23, 2024, which the Court granted on January 24, 2024. See 1:22-cv-07059 at Dkts. 34 and 35.

Following the PLAINTIFF's breach of the settlement agreement – by filing a motion to reopen case 1:22-cv-07059 on January 22, 2025 – NIPPON initiated a demand for arbitration with the American Arbitration Association pursuant to the terms of the settlement agreement. On January 29, 2025, Junko Inaga, NIPPON's office assistant – mailed a copy of NIPPON's demand for arbitration to the PLAINTIFF's home, 653 Wing Street, Elgin, IL, US 60123, via FedEx Priority Overnight. Exhibit A ¶ 3. Ms. Inaga mailed the demand to arbitration at the request and direction of NIPPON's counsel, Justin Wax Jacobs. Contemporaneous emails regarding the request to mail are attached as Exhibit B. FedEx delivered the package containing NIPPON's demand for arbitration to the PLAINTIFF's home on January 30, 2025 at 9:31 am local time. On January 31, 2025, the PLAINTIFF sent an objection to arbitration to the American Arbitration Association's International Centre for Dispute Resolution, in response to NIPPON's demand for arbitration.

Pursuant to a minute entry entered on April 9, 2025, the Court ordered the PLAINTIFF to respond to a motion by co-Defendant DAVIES LIFE & HEALTH, as to why the above titled and

current lawsuit should not be considered the refiling of PLAINTIFF's previous lawsuit against NIPPON, case number 1:22-cv-07059. Dkt. 29. In response, PLAINTIFF filed docket number 40. In her filing the PLAINTIFF alleged that NIPPON had filed an arbitration demand without notifying her and had "improperly served arbitration filings on two groups of former attorneys." Dkt. 40 at 2.

In opposition to both PLAINTIFF's response and her allegations regarding the improper service of materials for arbitration, NIPPON filed a reply to rebut and disprove the PLAINTIFF's claims that she had not received notice of the arbitration demand. See Dkt. 44. In support of its reply, NIPPON attached: i) a declaration by NIPPON's Office Assistant, Junko Inaga, affirming that she had mailed the demand for arbitration to the PLAINTIFF on January 29, 2025; ii) a copy of the demand for arbitration; iii) an email confirmation from FedEx of delivery to 653 Wing Street, Elgin, IL, US 60123 at 9:31 am local time, including photographic evidence of the envelope placed on the PLAINTIFF's front stoop; and iv) the PLAINTIFF's letter objecting to NIPPON's demand for arbitration sent to the American Arbitration Association. Dkt. 44 at Attachments 5, 6, 7, and 9.

On May 21, 2025, PLAINTIFF presented a motion to sanction NIPPON's legal counsel, Justin Wax Jacobs, to the Court "for knowingly submitting false declarations…" See Dkt. 57. Included in the motion was a certificate of service which stated "I, Graciela Dela Torre, certify that on May 21, 2025, I filed the foregoing Motion for Rule 11 Sanctions via the CM/ECF system, which will serve notice upon all parties of record." Dkt. 57 at 4. At no point prior to presenting her motion for sanctions to the Court on May 21, 2025 did the PLAINTIFF serve NIPPON with a copy of the motion. At no point prior to presenting the PLAINTIFF's motion for sanctions to the Court on May 21, 2025 did the Court set a different time frame other than the 21 days required by FRCP Rule 11(c)(2) for service prior to the presentation of a motion for sanctions.

III. LAW

FRCP Rule 11 states: "By presenting to the court a pleading, written motion, or other paper - whether by signing, filing, submitting or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances: 1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; 2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law; 3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery …." FRCP Rule 11(b).

Pursuant to paragraph (c), if "after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated the court may impose an appropriate sanction on any attorney, law firm or party that violated the rule or is responsible for the violation." FRCP Rule 11(c)(1). "The motion must be served under [FRCP] Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." FRCP Rule 11(c)(2).

"The standard for imposing Rule 11 sanctions is an objective determination of whether the sanctioned party's conduct was reasonable under the circumstances." *Westfield Partners, LTD. v. Hogan*, 744 F.Supp. 189, 193 (N.D. Ill. 1990); citing *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir. 1988). "There must be reasonable inquiry into both fact and law; there must be good faith (that is, the paper must not be interposed "to harass"); the legal theory must be objectively warranted by existing law or a good faith argument for the modification of existing law; and the [party] must believe that the complaint is well grounded in fact." *Hogan* at 193; citing *Szabo Food Service Inc. v. Canteen Corp.*, 823 F.2d 1073 (7th Cir. 1987).

4

IV. ARGUMENTS

**a. PLAINTIFF'S Motion is Procedurally Improper and Barred by the Federal Rules of Civil Procedure Rule 11 Safe Harbor Provision**

FRCP Rule 11 provides a 21 day safe harbor provision for all motions for sanction filed pursuant to the Rule. Accordingly, a motion for sanctions pursuant to FRCP Rule 11 "must be served under [FRCP] Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." FRCP Rule 11(c)(2). Federal Courts have consistently held that notice sent contemporaneously with motion docket filings do not constitute proper notice or service within the meaning of Rule 11's safe harbor provision. See *Henock v. Chase Home Finance, LLC*, 926 F.Supp.2d 100, 105 (D.D.C. 2013); *Bowler v. U.S. I.N.S.*, 901 F.Supp. 597, 604 (S.D.N.Y 1995).

In addition to the safe harbor requirements of Rule 11, the Court issued a minute entry on May 22, 2025, alerting the PLAINTIFF that "[t]he court will take no further action in this case until Defendants have been served with process."

PLAINTIFF filed and presented her Rule 11 motion for sanctions to the Court on May 21, 2025. Dkt. 57. PLAINTIFF never served NIPPON with a copy of her motion prior to her May 21, 2025 filing and presentation of the motion to the Court. PLAINTIFF never served NIPPON a copy of her motion pursuant to FRCP Rule 5 prior to May 21, 2025. Prior to May 21, 2025, the Court never changed the safe harbor period articulated by Rule 11(c)(2). As such, PLAINTIFF's May 21, 2025 CM/ECF filing does not constitute proper notice under Rule 11(c)(2), nor does it comply with the Court's May 22, 2025 minute entry.

Consequently, the PLAINTIFF's Rule 11 motion for sanctions against NIPPON's legal counsel violates Rule 11's safe harbor provision, is procedurally improper and therefore legally barred.

b. **PLAINTIFF'S Allegations Against NIPPON and NIPPON's Legal Counsel Are Baseless**

In her motion for sanctions, PLAINTIFF accuses NIPPON's legal counsel of "knowingly submitting false declarations" to the Court. Dkt. 57 at 1. Specifically, PLAINTIFF contends that counsel knowingly submitted a false declaration from Junko Inaga, in which she attested to mailing NIPPON's demand for arbitration to PLAINTIFF on January 29, 2025. PLAINTIFF further asserts, without evidentiary support, that it was actually NIPPON's legal counsel, Justin Wax Jacobs, who mailed the demand, not Ms. Inaga.

PLAINTIFF's allegations are baseless and demonstrably untrue. It is irrefutable that Junko Inaga did in fact mail NIPPON's demand for arbitration to the PLAINTIFF on January 29, 2025. Moreover, PLAINTIFF provides no evidence or proof to support her contention that NIPPON's counsel sent the demand for arbitration. Neither does the PLAINTIFF demonstrate that the disputed issue is a material matter.

1. <u>Junko Inaga Did In Fact Mail NIPPON's Demand for Arbitration</u>

Junko Inaga is the Office Assistant for NIPPON. Exhibit A ¶ 1. Her duties include sending packages, and other mail, from NIPPON's corporate office in New York City. Exhibit A ¶ 2. On Tuesday January 28, 2025, NIPPON's legal counsel requested, by email, that Ms. Inaga send NIPPON's demand for arbitration to the PLAINTIFF at her home, 653 Wing Street, Elgin, IL 60123. Exhibit B at 3. Per direction from counsel, on January 29, 2025, Ms. Inaga created a FedEx address label. Exhibit B at 1. The label was addressed to "Graciela Dela Torre, 653 Wing Street, Elgin, IL 60123. *Id.* Ms. Inaga then mailed the demand for arbitration to the PLAINTIFF on January 29, 2025. Exhibit A ¶ 3.

It is not uncommon in corporate settings for office assistants, executive assistants and secretaries to mail envelopes and packages on behalf of their colleagues. This is especially true in the era of remote

6

and hybrid work where employees are no longer required to conduct their work from the employer's office every day of the week.

The documentary evidence, consisting of the email correspondence attached as Exhibit B and the declaration of Junko Inaga, conclusively establishes that Ms. Inaga created the FedEx mailing label for NIPPON's demand for arbitration on January 28, 2025, and, at the direction of NIPPON's legal counsel, Justin Wax Jacobs, mailed the demand to PLAINTIFF on January 29, 2025.

It is also important to note that NIPPON had no incentive to misrepresent the identity of who mailed the demand for arbitration to the PLAINTIFF. In fact, as demonstrated in the prior lawsuit, NIPPON's counsel, Justin Wax Jacobs, has previously demonstrated the ability to mail and attest to the mailing of documents. See 1:22-cv-07059 at Dkt. 59. Had Justin Wax Jacobs personally mailed the documents at issue, it would have been simpler and more straightforward to attest to that fact directly, rather than involve a colleague and solicit a declaration. The reason Justin Wax Jacobs did not do so is because he was not the individual who mailed the demand, Ms. Inaga was. Any statement by Justin Wax Jacobs claiming otherwise would have constituted perjury.

2. PLAINTIFF Fails To Offer Any Evidence In Support of Her Allegations

PLAINTIFF provides no evidence in support of her allegations. Instead, PLAINTIFF asserts conclusory statements, based on nothing more than conjecture, layered with intentional mischaracterization and misrepresentation of facts, in a thinly veiled attempt to obfuscate the narrative.

First, the PLAINTIFF alleges that discrepancies with the tracking number – there were three individual shipments using the same FedEx tracking number – undermine the credibility of Ms. Inaga's declaration. Dkt. 57 ¶¶ 5-6. While NIPPON concedes that the tracking number used, 771746411777, applies to three different packages, this "discrepancy" does not undermine the credibility of Ms. Inaga's claims. Rather, PLAINTIFF's citation to the "delivery metadata" identifying a package shipped from

7

New York on January 29, 2025 and delivered in Elgin, IL on January 30, 2025, strengthens Ms. Inaga's declaration. Dkt. 57 ¶ 5. The "delivery metadata" identified by the PLAINTIFF corresponds with Ms. Inaga's declaration affirming that she mailed the demand for arbitration from NIPPON's New York office on January 29, 2025, which was then delivered to PLAINTIFF's home in Elgin, IL on January 30, 2025. Moreover, the "delivery metadata" also corresponds with the documentary proof provided by FedEx's delivery notification and photographic proof of the subject envelope being left on the PLAINTIFF's front steps. Dkt. 44 at Attachment 7, reattached here as Exhibit C. Although NIPPON cannot speak to FedEx's administration and use of its tracking numbers, the reuse of the number for subsequent packages has no bearing on the question at hand and in no way supports the PLAINTIFF's claims.

First, PLAINTIFF argues that discrepancies related to the tracking number – specifically, that three separate shipments were associated with the same FedEx tracking number – undermine the credibility of Ms. Inaga's declaration. Dkt. 57 ¶¶ 5–6. While NIPPON acknowledges that tracking number 771746411777 was used for multiple packages, this fact does not diminish the credibility of Ms. Inaga's sworn statement. On the contrary, PLAINTIFF's own reference to the "delivery metadata" – which reflects a shipment originating from New York on January 29, 2025, and delivered in Elgin, Illinois on January 30, 2025 – directly supports Ms. Inaga's declaration. Dkt. 57 ¶ 5.

This "delivery metadata" aligns with Ms. Inaga's attestation, that she mailed the demand for arbitration from NIPPON's New York office on January 29, 2025, and subsequently delivered to PLAINTIFF's residence in Elgin, IL on January 29, 2025. Furthermore, the "delivery metadata" corresponds with both the FedEx delivery notification and the photographic evidence showing the envelope on PLAINTIFF's front steps. See Exhibit C. While NIPPON cannot speak to FedEx's internal practices regarding tracking number reuse, such reuse has no bearing on the relevant issue – whether the

8

demand for arbitration was mailed and delivered – and in no way substantiates PLAINTIFF's claims.

In a previous filing, PLAINTIFF contends that the presence of Justin Wax Jacobs' name in the return address portion of the FedEx label "confirms that it was sent by Nippon's attorney, Justin Wax Jacobs," rather than by Ms. Inaga. Dkt. 52 at 2, ¶ 4. In support, PLAINTIFF includes an image of the FedEx label. Dkt. 52 at 3. However, this assertion is clearly refuted by the evidence. As shown in the attached email correspondence, it was Ms. Inaga who created the FedEx label and listed Justin Wax Jacobs as the return addressee. See Exhibit B. The emails also confirm that Ms. Inaga registered Justin Wax Jacobs' email address with FedEx for delivery notifications. *Id.* Such practices are routine in corporate environments, where support staff often prepare and send packages on behalf of attorneys and other colleagues.

Furthermore, none of the PLAINTIFF's assertions address the substantial evidence confirming that she did, in fact, receive the demand for arbitration on January 30, 2025. Her argument disregards the documentary proof contained in the FedEx delivery notification, as well as the photographic evidence showing the FedEx envelope on her front steps included in the delivery confirmation. Exhibit C. Additionally, PLAINTIFF fails to account for her own response to the demand: a letter sent to the American Arbitration Association on January 31, 2025, in which she objected to NIPPON's arbitration request. Dkt. 44 at Attachment 9, reattached hereto as Exhibit D.

Finally, in an ironic twist, PLAINTIFF's own inclusion of the FedEx label further corroborates Ms. Inaga's declaration and undermines her claim that she never received notification of NIPPON's demand for arbitration. NIPPON had not previously submitted the FedEx tracking label to the Court. Nor is it publicly accessible online. The only plausible way PLAINTIFF could have obtained the label image is by photographing it directly from the FedEx envelope in her possession – thereby providing irrefutable evidence that the demand for arbitration was delivered to her and in her possession on

9

January 30, 2025. Despite her continued denials to the contrary, the evidence clearly shows that PLAINTIFF received NIPPON's demand for arbitration on that date.

## V.  CONCLUSION

For all of the aforementioned reasons, PLAINTIFF's motion for sanctions pursuant to FRCP Rule 11 should be denied with prejudice.

Dated: July 21, 2025

Respectfully submitted,

_____
Justin Wax Jacobs
Attorney *Pro Hac Vice* for the Defendant
Nippon Life Insurance Company of America
666 Third Avenue, Suite 2201
New York, New York, 10017
Tel:    646-630-4923
Fax:    212-867-3057
J-WaxJacobs@nipponlifebenefits.com

**CERTIFICATE OF SERVICE**

I, Justin Wax Jacobs, hereby certify on July 21, 2025, I caused a true and correct copy of the foregoing Response in Opposition to PLAINTIFF's motion for sanctions and exhibits attached thereto, to be filed electronically with the Clerk of Court via the Court's CM/ECF system and thereby served upon all of the named parties or their representatives.

_____
Justin Wax Jacobs
Attorney *Pro Hac Vice* for the Defendant
Nippon Life Insurance Company of America