**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

------------------------------X

GRACIELA DELA TORRE,                           Case No.: 1:25-cv-01483

                Plaintiff,

      v.

DAVIES LIFE & HEALTH, INC., et al

                Defendant.

------------------------------X

**NIPPON LIFE INSURANCE COMPANY OF AMERICA'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

I.    PRELIMINARY STATEMENT

      Defendant, NIPPON LIFE INSURANCE COMPANY OF AMERICA (hereinafter referred to as the "DEFENDANT" or "NIPPON"), submits this Memorandum in opposition to the Plaintiff's (hereinafter referred to as the "PLAINTIFF or "DELA TORRE") motion for a temporary restraining order (TRO), filed to this case's docket as Docket (Dkt.) 121. NIPPON also submits this Memorandum in support for its cross motion to hold the PLAINTIFF in contempt of court pursuant to 18 U.S.C. § 401(3) for violating this Court's previous order, in case 1:22-cv-07059, compelling the PLAINTIFF to arbitrate. *Dela Torre v. Nippon Life Insurance Company of America*, 1:22-cv-07059 at Dkt. 95.

      PLAINTIFF's motion for a TRO is legally baseless, factually dishonest and bereft of merit. PLAINTIFF's TRO seeks to enjoin the arbitral proceedings with NIPPON arguing that the arbitration proceeding is invalid because the circumstances underlying NIPPON's factual claims for arbitration no longer exist. The Federal Arbitration Act does not confer upon the Courts the power to enjoin arbitral proceedings. See 9 U.S.C. §§ 1 *et seq*. Generally, Courts will only issue an anti-arbitration injunction when there is no enforceable arbitration agreement, and in cases where there are competing arbitration proceedings. Although the PLAINTIFF disputes the merits of NIPPON's claims underlying the arbitration, a disagreement on the substantive merits of an arbitral claim is not, nor has it ever been

1

grounds to enjoin the arbitral proceedings. Additionally, PLAINTIFF fails to demonstrate either a likelihood of success or irreparable harm, thereby falling short of her burden to establish a right to either a TRO or preliminary injunction. Furthermore, the factual contentions upon which the PLAINTIFF's TRO application relies on are demonstrably untrue and are intentionally dishonest. Therefore, the PLAINTIFF's emergency application for a TRO should be denied with prejudice.

Comparatively, PLAINTIFF's TRO application is yet another attempt in a continued pattern of disregarding the Court's order compelling arbitration. Despite that order, PLAINTIFF has persistently refused to submit to arbitration. Specifically, she has: 1) filed frivolous and improper objections with the arbitral body; 2) submitted a motion to dismiss—despite lacking authority to do so and without obtaining leave from the arbitrator to file a substantive motion; 3) attempted to invalidate the arbitration provision by asserting a cause of action to vacate the settlement agreement (which contains the enforceable arbitration clause) in her Third Amended Complaint; and 4) now seeks to enjoin the arbitration by applying to this Court for a temporary restraining order.

PLAINTIFF's conduct reveals a singular intent to delay and frustrate the arbitration process, in direct violation of the Court's standing order. Because she continues to defy that order, enforcement is not only warranted, it is necessary.

Therefore, NIPPON respectfully requests that the Court enforce its previous order compelling the PLAINTIFF to arbitrate by granting NIPPON's cross motion to hold the PLAINTIFF in contempt of Court.

## II.  FACTS

On January 2, 2024, the PLAINTIFF and NIPPON entered into a settlement agreement (hereinafter referred to as the "Agreement"), a redacted version is attached as Exhibit A, whereby the PLAINTIFF agreed to dismiss her previous lawsuit, *Dela Torre v. Nippon Life Insurance Company of America*, 1:22-cv-07059 at Dkt. 95 (N.D.Ill 2025) against NIPPON and release NIPPON from all

claims or liabilities associated with her claim for long term disability insurance. As part of the Agreement, the parties stipulated to submit any controversy, claim, or breach arising out of or relating the Agreement to binding arbitration administered by the American Arbitration Association (AAA) pursuant to its Commercial Arbitration Rules. Exhibit A at Section 3.6.

Pursuant to the Agreement, the parties submitted a joint stipulation to dismiss case 1:22-cv-07059 with prejudice on January 23, 2024, which the Court granted on January 24, 2024. See 1:22-cv-07059 at Dkts. 34 and 35.

Subsequently, the PLAINTIFF breached the Agreement by filing a motion to reopen *Dela Torre v. Nippon Life Insurance Company of America*, 1:22-cv-07059 seeking to invalidate the settlement agreement between the parties. In response, and pursuant to the Agreement between the parties, NIPPON initiated arbitration proceedings by submitting a demand for arbitration to the AAA on January 28, 2025, attached as Exhibit B. On January 29, 2025, Junko Inaga, NIPPON's office assistant – mailed a copy of NIPPON's demand for arbitration to the PLAINTIFF's home, 653 Wing Street, Elgin, IL, US 60123, via FedEx Priority Overnight. FedEx delivered the package containing NIPPON's demand for arbitration to the PLAINTIFF's home on January 30, 2025 at 9:31 am local time. Confirmation of delivery is attached as Exhibit C.

On January 31, 2025, the PLAINTIFF objected to the arbitration by submitting an email, attached as Exhibit D, to the AAA's International Centre for Dispute Resolution, expressing her intent not to submit to the arbitral proceedings. Seeking to enforce the Agreement's arbitration provision, NIPPON submitted a motion to compel arbitration to the Court on February 3, 2025. *Dela Torre v. Nippon Life Insurance Company of America*, 1:22-cv-07059 at Dkts. 50 and 51.

By letter dated January 31, 2025, sent via email and attached here as Exhibit E, the AAA confirmed receipt of the January 28, 2025 demand for arbitration. The letter notified the parties that the case was being handled by the AAA's International Centre for Dispute Resolution (ICDR) but

3

administered under the AAA's Commercial Arbitration Rules (hereinafter referred to as the "Arbitration Rules"), and the Arbitration Rules' expedited procedures would be applied since the claim did not exceed $100,000. Exhibit E at 2. The letter further notified the PLAINTIFF, as the Respondent, that pursuant to Section R-5(a) of the Arbitration Rules, that she had 14 days within the date of the letter to file an answering statement or file a counterclaim. *Id.* The parties were also instructed to reserve any comments regarding the merits of the dispute for the Tribunal, i.e. the arbitrator. *Id.*

A hearing was held by the Court on February 13, 2025 on both the PLAINTIFF's motion to reopen and NIPPON's motion to compel arbitration. By a decision dated February 13, 2025, attached as Exhibit F, the Court denied PLAINTIFF's motion to reopen. In addition, the Court held that the settlement Agreement between the parties, and by extension the Agreement's arbitration provision, was valid. Exhibit F. The Court also granted NIPPON's motion to compel arbitration stating that after "[h]aving found the agreement enforceable, the court concludes that any legitimate further disputes arising out the [sic] agreement are indeed subject to arbitration." *Id.*

Despite the Court's order, the PLAINTIFF brought a new lawsuit against NIPPON seeking to invalidate the Agreement, and by extension the arbitration provision, by filing an amended complaint to this lawsuit on March 10, 2025. Dkt. 8. PLAINTIFF subsequently amended her complaint – PLAINTIFF's Third Amended complaint – on June 16, 2025. Dkt. 80. PLAINTIFF's amended complaint still asserted a cause of action to invalidate the Agreement as well as two additional causes of action under ERISA for breach of fiduciary duty and retaliation, which were subject to arbitration per the Agreement and the Court's February 13, 2025 order. See Dkt. 80.

On April 11, 2025, PLAINTIFF filed a motion "to place defendant's bad faith pattern on record and request judicial notice and equitable relief" as docket number 36, and a motion "for judicial notice of prior regulatory sanctions against" NIPPON as docket number 37. Dkts. 36 and 37.

4

On April 16, 2025, PLAINTIFF filed a new motion "to withdraw document #36 and substitute corrected filing" as docket number 38. Dkt. 38. By a minute entry dated April 17, 2025, the Court held that "[t]he Plaintiff's motion 38 to withdraw R. 36 is granted only insofar as R. 36 is terminated as withdrawn and has no operative effect. No other relief sought in R. 37 and R. 38 are granted." Dkt. 39.

In direct contravention of the Court's February 13, 2025 order to arbitrate, the PLAINTIFF submitted a motion to dismiss the arbitration, attached as Exhibit G, on March 14, 2025 alleging improper service of the demand for arbitration. Pursuant to Section R-34 of the AAA's Commercial Arbitration Rules, attached as Exhibit H, a party may only submit a dispositive motion, such as a motion to dismiss, when given leave to do so by the arbitrator and "only if the arbitrator determines the moving party has shown that the motion is likely to succeed." Exhibit H at 26, R-34(a). The PLAINTIFF submitted her motion to dismiss despite the fact that: i) an arbitrator had not yet been appointed; ii) she had not been given leave to file a substantive motion; iii) it was not determined nor demonstrated the likelihood of success of the motion; and iv) she did not have standing to submit a substantive motion pursuant to the Commercial Arbitration Rules.

On July 7, 2025, the AAA's IARC issued a letter, attached as Exhibit I, rendering a determination that NIPPON had met the filing requirements by filing a notice of arbitration under its rules and/or procedures and denying the PLAINTIFF's motion to dismiss. Despite the denial, PLAINTIFF submitted a new objection on July 10, 2025, attached as Exhibit J, again claiming improper service. Exhibit J. On July 15, 2025, the AAA representative informed the PLAINTIFF that the IARC's determination is final and not subject to appeal. *Id*. She was further informed that she could bring her concerns to the arbitrator once they were appointed. *Id.*

Yet, the PLAINTIFF filed another objection to arbitration on July 22, 2025, attached as Exhibit K. In her new objection the PLAINTIFF falsely claimed that she did not consent to arbitration

5

"in any form, capacity, or derivation related to [her] ERISA-governed claim." Exhibit K. PLAINTIFF also alleged: i) improper service; ii) false declaration by Junko Inaga; iii) partial delivery of documents; and iv) the continued pursuit of arbitration despite the Court's denial of her motion to reopen. *Id*. In support, the PLAINTIFF falsely claimed that there was an ongoing forensic review of procedural misconduct regarding NIPPON's initiation of the subject arbitration, and that this Court had granted the PLAINTIFF's motions in the present lawsuit (1:25-cv-01483) filed as docket numbers 37, 38 and 39 – which the PLAINTIFF further claimed "confirm[ed] the arbitration misconduct is now part of the judicial record." *Id.* Finally, the PLAINTIFF requested that "AAA/ICDR take no further action and halt the progression of this arbitration pending resolution by the U.S. District Court." *Id.*

On July 22, 2025, the PLAINTIFF filed an emergency motion for a temporary restraining order (TRO). Dkt. 121. In her motion, the PLAINTIFF again falsely asserted that the Court had granted her motions docketed as numbers 37 and 38. Dkt. 121 at 1. PLAINTIFF also accused NIPPON of engaging in procedural fraud per the ICDR International Arbitration Rules, attached as Exhibit L, – even though the applicable arbitration rules under the Agreement was the AAA's Commercial Arbitration Rules – because the demand for arbitration was served without a request for signature.

### III. ARGUMENTS IN OPPOSITION

PLAINTIFF's emergency application for a temporary restraining order (TRO) lacks even a modicum of legal merit. PLAINTIFF seeks to have the Court enjoin the pending arbitration between herself and NIPPON. PLAINTIFF's motion is premised on her contention that: 1) NIPPON failed to provide valid delivery of the demand for arbitration with confirmed receipt; and 2) the arbitration demand is based on a false claim that the PLAINTIFF reopened the previous lawsuit. Dkt. 121 at 1.

As a threshold issue, PLAINTIFF's request to enjoin the pending arbitration is legally untenable

6

since federal courts do not have the authority to enjoin arbitral proceedings due to a disagreement over the merits of the disputed issues. By an order dated February 13, 2025, this Court has already determined that there is a valid arbitration agreement between the PLAINTIFF and NIPPON, and that any disputes arising out of the Agreement is subject to arbitration. Exhibit F. PLAINTIFF also fails to demonstrate the likelihood of success for her injunction request or irreparable harm. Moreover, PLAINTIFF asserts facts in support of her motion which are demonstrably untrue and therefore fatal to her request.

    a. **The Court Has Already Determined Arbitrability of the Issue**

On February 13, 2025, the Court issued an order granting NIPPON's motion to compel arbitration. Exhibit F. In addition to granting the motion, the Court observed that the settlement Agreement – and by extension the arbitration provision within the Agreement – was enforceable. *Id.* The Court further declared "that any legitimate further disputes arising out the [sic] agreement are indeed subject to arbitration. *Id.*

NIPPON submitted its demand for arbitration based on its claim that the PLAINTIFF violated the settlement Agreement between the two parties. Since breaches and violations of the Agreement, by their very nature, arise out of the Agreement itself – the Court has already determined that the issue before the AAA is arbitrable. Furthermore, the Court has held that the Agreement's arbitration provision between the PLAINTIFF and NIPPON is enforceable.

    b. **The Court Does Not Have the Authority to Enjoin this Arbitration**

While the Federal Arbitration Act authorizes permits a Court to compel arbitration, it does not express any authority for the Court to enjoin an arbitration proceeding. See 9 U.S.C. §§ 1 *et seq*. However, legal precedent has established two instances where a Court may enjoin arbitration. First, when a party seeks to enjoin an arbitral proceeding on the ground that it has not entered into an enforceable agreement. See *Hospira, Inc. v. Therabel Pharma N.V.*, 2013 WL 3811488, at *17 (N.D. Ill. 2013); *URS Corp. v. Lebanese Co. for Dev. & Reconstruction of Beirut Cent. Dist. SAL*, 512 F. Supp.

7

2d 199 (D. Del. 2007). Second, when there are competing arbitration proceedings between the parties over the same issues. See *Farrell v. Subway Int'l, B.V.,* 2011 WL 1085017, at *1 (S.D.N.Y. 2011).

There is no authority or legal precedent – nor does the PLAINTIFF cite, refer to, or refence any precedent – for a court to issue an anti-arbitration injunction based on a party's disagreement over the merits of the issue being arbitrated. Such an authority would undermine the purpose of the Federal Arbitration Act by creating concurrent jurisdiction between the arbitral body and the Courts to determine the merits of a case, thereby invalidating the binding nature of the arbitration. Neither is there any authority or legal precedent – nor does the PLAINTIFF cite, refer to, or reference any precedent – for a court to issue an anti-arbitration injunction based on procedural issues in the arbitral process. Although a party may seek to vacate an arbitral award or direct a rehearing of the arbitration after the arbitration pursuant to 9 U.S.C. § 10, the FAA does not permit a Court to enjoin the arbitration during the proceedings.

PLAINTIFF's emergency application for a TRO seeks to enjoin the pending arbitration between herself and NIPPON based solely on her disagreement with the merits of NIPPON's claim and baseless accusations of procedural issues, which will be addressed *infa*. PLAINTIFF does not dispute the arbitrability of the issue – her breach of the Agreement – currently pending before the AAA. And, even if she did, the issue has already been decided per the Court's February 13, 2025 order declaring that the issue is arbitrable. Neither does the PLAINTIFF claim that there are competing arbitral proceedings – which there aren't. Consequently, the PLAINTIFF has failed to identify a valid legal basis to enjoin the pending arbitration.

Therefore, the Court does not have the authority to enjoin the pending arbitration between the PLAINTIFF and NIPPON.

  c. **PLAINTIFF's Substantive Argument for a TRO is Disingenuous**

In her emergency motion for a TRO the PLAINTIFF argues that the pending arbitration with

8

NIPPON is invalid because NIPPON's claim – that PLAINTIFF breached the settlement Agreement by filing to reopen the case – is now moot. In support, the PLAINTIFF further argues that her motion to "reopen was formally denied, rendering the prior case closed and the settlement final." Dkt. 121 at 1. PLAINTIFF also asserted that the Court's February 13, 2025 order denying her motion confirms "that the case remains closed and that the prior settlement is final and enforceable." Dkt. 121 at 2 ¶ 2.

NIPPON maintains that PLAINTIFF's argument is a dispute over the merits of an issue subject to the pending arbitration between the parties. NIPPON further maintains that the Court has no authority to render a decision or a determination on the merits of a dispute which are subject to pending arbitration. NIPPON raises references this issue not to challenge the jurisdictional boundaries of the Court or the merits of PLAINTIFF's argument, but rather to expose the inconsistency and disingenuousness of her position. In her motion, PLAINTIFF concedes that the settlement agreement with NIPPON is "final and enforceable." Yet, in her operative complaint, she simultaneously contends that the same agreement is invalid. See Dkt. 80. And, PLAINTIFF continues to pursue causes of action which are barred by the Agreement's release. See Exhibit A, Section 2.1. PLAINTIFF also persists in refusing to submit to arbitration, despite acknowledging that the arbitration clause is enforceable through the validity of the agreement itself. If PLAINTIFF concedes the Agreement is binding, her continued efforts to undermine and invalidate it are plainly inconsistent and contradictory. PLAINTIFF is trying to have her cake and eat it too.

   **d. PLAINTIFF Has Failed to Demonstrate a Likelihood of Success or Irreparable Harm**

The lack of judicial authority to enjoin the pending arbitration notwithstanding, the PLAINTIFF has also failed to demonstrate the likelihood of success for her motion or show that she would suffer irreparable harm.

Although the PLAINTIFF has fashioned her motion as a Temporary Restraining Order, she is truly seeking a preliminary injunction to enjoin the pending arbitration between her and NIPPON. To

9

obtain a preliminary injunction, the moving party must show that it is likely to succeed on the merits, that it has no adequate remedy at law, and that it will suffer irreparable harm in the absence of an injunction. *DM Trans, LLC v. Scott*, 38 F.4th 608 (7th Cir. 2022); citing *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th at 539 (7th Cir. 2021). "The moving party's likelihood of prevailing on the merits must exceed 'a mere possibility of success.'" *DM Trans* at 617; quoting *Life Spine* at 540; *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). "Harm is irreparable if legal remedies available to the movant are inadequate, meaning they are seriously deficient as compared to the harm suffered." *DM Trans* at 618; citing *Life Spine* at 545.

As previously discussed, Courts lack the legal authority to enjoin arbitral proceedings outside of disputes over arbitrability or competing arbitral proceedings. PLAINTIFF's request for an anti-arbitration injunction – based on disputes over the merits of the issue and arbitral procedures – falls outside the scope of either. As such, the PLAINTIFF's motion enjoys no likelihood of success on the merits.

Additionally, the PLAINTIFF has failed to demonstrate that she would suffer irreparable harm by allowing the arbitration to proceed. Requiring the PLAINTIFF to participate in a proceeding which she agreed to participate in, cannot in any way constitute harm let alone irreparable harm. PLAINTIFF's claim that defending "a procedurally defective arbitration she never consented to" would cause her irreparable harm is absurd. First, as the Court has previously held, the PLAINTIFF accepted the terms of the settlement Agreement with NIPPON, which included the arbitration provision. Exhibit F at 1. PLAINTIFF's continued protestations that she never consented to arbitration contradict the Court's holding and clearly represents a bad faith assertion of an argument which has conclusively been disproven. Second, the PLAINTIFF has failed to substantiate her claim that the arbitration process has been procedurally defective. While PLAINTIFF claims NIPPON provided defective notice – a claim without merit which will be further discussed *infra.* – she has failed to show or even allege that the AAA

has failed to properly administer the arbitration procedurally.

Therefore, the PLAINTIFF has failed to meet her burden of proof to obtain a preliminary injunction.

**e. PLAINTIFF Has Asserted Facts in Support of Her Motion Which Are Demonstrably False**

PLAINTIFF not only seeks a remedy beyond the scope of the Court's authority and fails to demonstrate a likelihood of success on the merits or irreparable harm, but her emergency application also relies on factual contentions which are demonstrably and egregiously false.

In her emergency motion for a TRO the PLAINTIFF claims that "the Court granted Plaintiff's Dkt. 37 Judicial Notice of Prior Regulatory Sanctions against NLI & Dkt. 38 Motion to Place Arbitration Misconduct on Record." Dkt. 121 at 1. PLAINTIFF further claims that the Court's ruling to grant those motions "explicitly permitted the inclusion of ICDR misconduct into the record of the federal case." *Id.* The problem for PLAINTIFF is that neither claim is true.

By minute entry entered on April 17, 2025, Judge Chang held "[t]he Plaintiff's motion 38 to withdraw R. 36 is granted only insofar as R. 36 is terminated as withdrawn and has no operative effect. No other relief sought in R.37 and R.38 are granted." Dkt. 39. The Court never granted PLAINTIFF's motion for "Judicial Notice of Prior Regulatory Sanctions against NLI" filed as docket 37. In fact, the Court explicitly stated that no relief sought in the motion was granted. Dkt. 39. Regarding PLAINTIFF's motion to "Place Arbitration Misconduct on Record," the Court only granted the motion insofar as its request to withdraw PLAINTIFF's previous motion, docket 36. Again, the Court expressly stated that no other relief sought in the PLAINTIFF's motion, docket 38, was granted. Inclusion of the PLAINTIFF's allegations against NIPPON of IDCR misconduct were never permitted to be entered into the record by the Court. PLAINTIFF's assertion that the Court granted her motion goes beyond a mere mischaracterization but constitutes an intentional lie egregiously presented to the Court as true.

The PLAINTIFF's claim of defective notice of the demand for arbitration under the applied rules

of arbitration are similarly baseless. In her motion, the PLAINTIFF asserts that "[t]he arbitration filing rests on a demonstrably false foundation, in violation of Rule 2 of the ICDR International Arbitration Rules and Administrative Guideline B.3, both of which require valid delivery with confirmed receipt." Dkt. 121 at 1. Yet again, these claims are untrue.

First, pursuant to the Agreement and the initiating letter sent by the AAA, the controlling rules for the arbitration proceedings between the PLAINTIFF and NIPPON are the AAA's Commercial Arbitration Rules, not the ICDR International Arbitration Rules. Paragraph (b) of R-4 outlines proper notice of the demand for arbitration to the opposing party. R-4(b)(iii) states: "[a]ny papers, notices, or process necessary or proper for the initiation of an arbitration under this Rule may be served on a party: a) by mail addressed to the party or its authorized representative at their last known address…" R-4(b) authorizes notice by mail and does not require delivery with "confirmed receipt." NIPPON's Counsel has reviewed the entirety of the AAA's Commercial Arbitration Rules and cannot find a single requirement of providing notice with "confirmed receipt."

As has been consistently demonstrated throughout this litigation, NIPPON mailed the demand for arbitration to the PLAINTIFF on January 29, 2025. The demand for arbitration was delivered to PLAINTIFF's home – 653 Wing Street, Elgin, IL 60123 – at 9:31am on January 30, 2025. FedEx's delivery confirmation provides documentary proof of delivery and photographic proof as well. The notice requirements under Commercial Arbitration Rule R-4(b)(ii) were thereby met by NIPPON.

Second, even an examination of the AAA's International Dispute Resolution Procedures (IDRP) does not yield support for the PLAINTIFF's claims. There is no Rule 2 in the IDRP. Article 2 of the IDRP does refer to notice of Arbitration. Paragraph 1 of Article 2 states: "[t]he party initiating arbitration ("Claimant" shall, in compliant with Article 10, give written Notice of Arbitration to the Administrator and at the same time to the party against whom a claim is being made ("Respondent")." Article 10 of the IDRP states: "[u]nless otherwise agreed to by the parties or ordered by the arbitral tribunal, all notices

12

and written communications may be transmitted by any means of communication that allows for a record of its transmission including mail … addressed to the party or its representatives at its last-known address, or by personal service." At no point in either Article 2 or Article 10 of the IDPR is their a requirement for "delivery receipt." And, the method of mail chosen by NIPPON to deliver the demand for arbitration included a record of transmission as indicated by the tracking number associated with the mailing and the delivery confirmation provided by FedEx. Even under the IDRP, the method of notification was compliant with the arbitral rules. Put simply, PLAINTIFF's claim that the AAA's rules require a "delivery receipt" are fabricated.

Therefore, the factual underpinnings upon which the PLAINTIFF uses as support for her TRO application are nothing more than fictional.

IV. CONCLUSION

For all of the aforementioned reasons, PLAINTIFF's emergency motion for a TRO must be denied with prejudice.

Dated: July 28, 2025

Respectfully submitted,

_____
Justin Wax Jacobs
Attorney *Pro Hac Vice* for the Defendant
Nippon Life Insurance Company of America
666 Third Avenue, Suite 2201
New York, New York, 10017
Tel:   646-630-4923
Fax:   212-867-3057

**CERTIFICATE OF SERVICE**

I, Justin Wax Jacobs, hereby certify on July 28, 2025, I caused a true and correct copy of the foregoing Memorandum of Law in Opposition to PLAINTIFF's Motion for a Temporary Restraining Order, and all exhibits attached therein, to be filed electronically with the Clerk of Court via the Court's CM/ECF system and thereby served upon all of the named parties or their representatives.

                                                                                        _____
                                                                                        Justin Wax Jacobs
                                                                                        Attorney *Pro Hac Vice* for the Defendant
                                                                                        Nippon Life Insurance Company of America