UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

------------------------------X

GRACIELA DELA TORRE,                                    Case No.: 1:25-cv-01483

                      Plaintiff,

            v.

DAVIES LIFE & HEALTH, INC., et al

                      Defendant.

------------------------------X

**AFFIDAVIT IN SUPPORT OF NIPPON LIFE INSURANCE COMPANY OF AMERICA'S MOTION TO ENFORCE THE COURT'S FEBRUARY 13, 2025 ORDER COMPELLING ARBITRATION BY HOLDING THE PLAINTIFF IN CIVIL CONTEMPT OF COURT PURSUANT TO 18 U.S.C. § 401(3)**

    Justin Wax Jacobs, affirms the following to be true under the penalties of perjury pursuant to section 1621 of title 18 of the United States Code:

    1.    I am the attorney for NIPPON LIFE INSURANCE COMPANY OF AMERICA (hereinafter referred to as "NIPPON" or the "DEFENDANT"), one of the three named Defendants in the above titled action. As NIPPON's attorney, I am fully familiar with and have personal knowledge of the facts and circumstances contained, referenced and discussed herein.

    2.    I submit this affidavit in support of NIPPON's motion to enforce the Court's February 13, 2025 order – compelling the Plaintiff, GRACIELA DELA TORRE ("hereinafter referred to as "DELA TORRE" or the "PLAINTIFF") to arbitrate – by holding the PLAINTIFF in civil contempt of Court pursuant to 18 U.S.C. § 401(3).

    I.    PRELIMINARY STATEMENT

    3.    NIPPON respectfully moves to enforce this Court's February 13, 2025 order, compelling the PLAINTIFF to arbitrate, by holding the PLAINTIFF in civil contempt of court pursuant to 18 U.S.C. § 401(3). *Dela Torre v. Nippon Life Insurance Company of America*, 1:22-

1

cv-07059 at Dkt. 95 (N.D.Ill 2025). Despite the Court's order, PLAINTIFF has persistently refused to submit to arbitration. Specifically, she has: 1) filed frivolous and improper objections containing demonstrable falsehoods with the arbitral body; 2) submitted a motion to dismiss—despite lacking authority to do so and without obtaining leave from the arbitrator to file a substantive motion; and 3) sought to enjoin the arbitration by applying to this Court for a temporary restraining order based on affirmatively untrue statements. Additionally, the PLAINTIFF has asserted causes of action in her complaint which arise out of the Agreement and have, therefore, been held subject to arbitration by this Court.

4.  PLAINTIFF's conduct has intentionally delayed and obstructed the arbitral process in a transparent effort to circumvent arbitration and, by extension, to avoid compliance with this Court's February 13, 2025 order. Despite the Court's clear ruling that the asserted causes of action are subject to arbitration, PLAINTIFF has flagrantly disregarded the order by including multiple such claims in her complaint. PLAINTIFF has failed to demonstrate compliance - whether in good faith or otherwise - and has instead engaged in a pattern of conduct aimed at undermining the Court's directive. This non-compliance has caused unnecessary delays in the arbitration proceedings and compelled NIPPON to expend significant time, effort, and resources responding to increasingly baseless filings. Accordingly, PLAINTIFF's actions constitute a direct violation of the Court's order compelling arbitration.

5.  Therefore, NIPPON requests that the Court enforce the February 13, 2025 order compelling arbitration and hold GRACIELA DELA TORRE in civil contempt.

## II.    FACTS

6.  On January 2, 2024, the PLAINTIFF and NIPPON entered into a settlement agreement (hereinafter referred to as the "Agreement"), a redacted version is attached as Exhibit

A, whereby the PLAINTIFF agreed to dismiss her previous ERISA lawsuit, *Dela Torre v. Nippon Life Insurance Company of America*, 1:22-cv-07059 against NIPPON and release NIPPON from all claims or liabilities associated with her claim for long term disability insurance. Exhibit A Section 2.1. As part of the Agreement, the parties stipulated to submit any controversy, claim, or breach arising out of or relating the Agreement to binding arbitration administered by the American Arbitration Association (AAA) pursuant to its Commercial Arbitration Rules. Exhibit A at Section 3.6.

7. Pursuant to the Agreement, the parties submitted a joint stipulation to dismiss case 1:22-cv-07059 with prejudice on January 23, 2024, which the Court granted on January 24, 2024. See 1:22-cv-07059 at Dkts. 34 and 35. Subsequently, the PLAINTIFF breached the Agreement by filing a motion to reopen *Dela Torre v. Nippon Life Insurance Company of America*, 1:22-cv-07059 seeking to invalidate the settlement agreement between the parties.

8. In response, and pursuant to the Agreement between the parties, NIPPON initiated arbitration proceedings by submitting a demand for arbitration to the AAA on January 28, 2025, attached as Exhibit B. On January 29, 2025, Junko Inaga, NIPPON's office assistant – mailed a copy of NIPPON's demand for arbitration to the PLAINTIFF's home, 653 Wing Street, Elgin, IL, US 60123, via FedEx Priority Overnight. FedEx delivered the package containing NIPPON's demand for arbitration to the PLAINTIFF's home on January 30, 2025 at 9:31 am local time. Confirmation of delivery is attached as Exhibit C.

9. On January 31, 2025, the PLAINTIFF objected to the arbitration by submitting an email, attached as Exhibit D, to the AAA's International Centre for Dispute Resolution, expressing her intent not to submit to the arbitral proceedings. Seeking to enforce the Agreement's arbitration provision, NIPPON submitted a motion to compel arbitration to the

3

Court on February 3, 2025. *Dela Torre v. Nippon Life Insurance Company of America*, 1:22-cv-07059 at Dkts. 50 and 51.

10. By letter dated January 31, 2025, sent via email and attached here as Exhibit E, the AAA confirmed receipt of the January 28, 2025 demand for arbitration. The letter notified the parties that the case was being handled by the AAA's International Centre for Dispute Resolution (ICDR) but administered under the AAA's Commercial Arbitration Rules (hereinafter referred to as the "Arbitration Rules"), and the Arbitration Rules' expedited procedures would be applied since the claim did not exceed $100,000. Exhibit E at 2. The letter further notified the PLAINTIFF, as the Respondent, that pursuant to Section R-5(a) of the Arbitration Rules, that she had 14 days within the date of the letter to file an answering statement or file a counterclaim. *Id.* The parties were also instructed to reserve any comments regarding the merits of the dispute for the Tribunal, i.e. the arbitrator. *Id.*

11. A hearing was held by the Court on February 13, 2025 on both the PLAINTIFF's motion to reopen and NIPPON's motion to compel arbitration. By a decision dated February 13, 2025, attached as Exhibit F, the Court denied PLAINTIFF's motion to reopen. In addition, the Court held that the settlement Agreement between the parties, and by extension the Agreement's arbitration provision, was valid. Exhibit F. The Court also granted NIPPON's motion to compel arbitration stating that after "[h]aving found the agreement enforceable, the court concludes that any legitimate further disputes arising out the [sic] agreement are indeed subject to arbitration." *Id.*

12. Despite the Court's order, the PLAINTIFF brought a new cause of action against NIPPON seeking to invalidate the Agreement, and by extension the arbitration provision, by filing an amended complaint to this lawsuit on March 10, 2025. On April 11, 2025, PLAINTIFF

filed a motion "to place defendant's bad faith pattern on record and request judicial notice and equitable relief" as docket number 36, and a motion "for judicial notice of prior regulatory sanctions against" NIPPON as docket number 37. Dkts. 36 and 37. On April 16, 2025, PLAINTIFF filed a new motion "to withdraw document #36 and substitute corrected filing" as docket number 38. Dkt. 38. By a minute entry dated April 17, 2025, the Court held that "[t]he Plaintiff's motion 38 to withdraw R. 36 is granted only insofar as R. 36 is terminated as withdrawn and has no operative effect. No other relief sought in R. 37 and R. 38 are granted." Dkt. 39.

13. In direct contravention of the Court's February 13, 2025 order to arbitrate, the PLAINTIFF submitted a motion to dismiss the arbitration, attached as Exhibit G, on March 14, 2025 alleging improper service of the demand for arbitration. Pursuant to Section R-34 of the AAA's Commercial Arbitration Rules, attached as Exhibit H, a party may only submit a dispositive motion, such as a motion to dismiss, when given leave to do so by the arbitrator and "only if the arbitrator determines the moving party has shown that the motion is likely to succeed." Exhibit H at 26, R-34(a). The PLAINTIFF submitted her motion to dismiss despite the fact that: i) an arbitrator had not yet been appointed; ii) she had not been given leave to file a substantive motion; iii) it was not determined nor demonstrated the likelihood of success of the motion; and iv) she did not have standing to submit a substantive motion pursuant to the Commercial Arbitration Rules.

14. On July 7, 2025, the AAA's IARC issued a letter, attached as Exhibit I, rendering a determination that NIPPON had met the filing requirements by filing a notice of arbitration under its rules and/or procedures and denying the PLAINTIFF's motion to dismiss. Despite the denial, PLAINTIFF submitted a new objection on July 10, 2025, attached as Exhibit J, again

5

claiming improper service. Exhibit J. On July 15, 2025, the AAA representative informed the PLAINTIFF that the IARC's determination is final and not subject to appeal. *Id.* She was further informed that she could bring her concerns to the arbitrator once they were appointed. *Id.*

15.     Yet, the PLAINTIFF filed another objection to arbitration on July 22, 2025, attached as Exhibit K. In her new objection the PLAINTIFF falsely claimed that she did not consent to arbitration "in any form, capacity, or derivation related to [her] ERISA-governed claim." Exhibit K. PLAINTIFF also alleged: i) improper service; ii) false declaration by Junko Inaga; iii) partial delivery of documents; and iv) the continued pursuit of arbitration despite the Court's denial of her motion to reopen. *Id.* In support, the PLAINTIFF falsely claimed that there was an ongoing forensic review of procedural misconduct regarding NIPPON's initiation of the subject arbitration, and that this Court had granted the PLAINTIFF's motions in the present lawsuit (1:25-cv-01483) filed as docket numbers 37, 38 and 39 – which the PLAINTIFF further claimed "confirm[ed] the arbitration misconduct is now part of the judicial record." *Id.* Finally, the PLAINTIFF requested that "AAA/ICDR take no further action and halt the progression of this arbitration pending resolution by the U.S. District Court." *Id.*

16.     On July 22, 2025, the PLAINTIFF filed an emergency motion for a temporary restraining order (TRO). Dkt. 121. In her motion, the PLAINTIFF again falsely asserted that the Court had granted her motions docketed as numbers 37 and 38. Dkt. 121 at 1. PLAINTIFF also accused NIPPON of engaging in procedural fraud per the ICDR International Arbitration Rules – even though the applicable arbitration rules under the Agreement was the AAA's Commercial Arbitration Rules – because the demand for arbitration was served without a request for signature.

III.    LAW

17. 18 U.S.C. § 401 provides United States Courts with the legal authority to "punish by fine or imprisonment, or both, at its discretion, such contempt of its authority" for the "[d]isobedience or resistance to its lawful writ, process, order, rule, decree or command." 18 U.S.C. § 401(3). To succeed on a motion for civil contempt a movant must prove "by clear and convincing evidence that the opposing party violated a court order (internal quotations omitted)." *Goluba v. School Dist. Of Ripon,* 45 F.3d 1035, 1037 (7th Cir. 1995); quoting *Stotler and Co. v. Able,* 870 F.2d 1158, 1163 (7th Cir. 1989); *Hayden v. Oak Terrace Apartments,* 808 F.2d 1269, 1270 (7th Cir. 1987). The Court does not have to find that the violation was willful, but "may find a party in civil contempt if that party has not been reasonably diligent and energetic in attempting to accomplish what was ordered (internal quotations omitted)." *Goluba* at 1037; citing *Stotler* at 1163.

IV. ARGUMENTS

a. **An Enforceable Arbitration Agreement Exists Between the Parties**

18. A valid and enforceable arbitration agreement exists between the two named parties in the above-titled action. The arbitration agreement was a clause included within the settlement agreement executed by the parties. See Exhibit A at §3.6. Section 3.6 states, in part, "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof." *Id.*

19. The arbitration clause was a material component of the Agreement. Proper consideration was provided to establish the enforceability of the agreement whereby NIPPON agreed to pay the PLAINTIFF the full settlement amount in exchange. See Exhibit A, Section

7

1.1. The PLAINTIFF consented to the agreement both by signing the settlement agreement itself, and by accepting payment of the settlement amount subsequent to the execution of the Agreement.

20. On February 13, 2025, the Court issued an order holding that the settlement Agreement – and by extension the arbitration provision within the Agreement – was enforceable. *Id.* The Court further declared "that any legitimate further disputes arising out the [sic] agreement are indeed subject to arbitration. *Id.* The PLAINTIFF's continued challenge to the Court's order – and by extension the Agreement's arbitration provision – is barred by the doctrine of collateral estoppel.

21. Collateral estoppel, otherwise referred to issue preclusion, is a jurisprudential rule that arises in a subsequent proceeding when an issue of ultimate fact has been determined by a valid and final determination in a prior proceeding. See *Bobby v. Bies*, 556 U.S. 825, 129 S. Ct. 2145 (2009). The Restatement (Second) of Judgments specifies that the general rule for issue preclusion is "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27, p. 250 (1980). A party is collaterally estopped from raising an issue pursuant to the doctrine of issue preclusion when "1) the party against whom the doctrine is asserted was a party to the earlier proceeding; 2) the issue was actually litigated and decided on the merits; 3) the resolution of the particular issue was necessary to the result; and 4) the issues are identical." *Zip Dee, Inc. v. Dometic Corp.*, 886 F.Supp 1427, 1436 (7th Cir. 1995); citing *Kraushaar v. Flanigan*, 45 F.3d 1040, 1050 (7th Cir. 1995).

22. There is no dispute that the PLAINTIFF was a named party in the previous

lawsuit. The issue of the validity of the Agreement was actually litigated by the parties pursuant to the PLAINTIFF's motion to reopen the case and invalidate the Agreement. The issue of the enforceability of the Agreement's arbitration provision was actually litigated pursuant to NIPPON's motion to compel arbitration. Resolution of the two issues were necessary to the resolution of the two aforementioned motions. A hearing was held on the two motion on February 13, 2025. PLAINTIFF attended the hearing and participated in the hearing. Questions on the validity of the Agreement and enforceability of the arbitration provision are identical from the previous case. As such, the issues of validity and enforceability are precluded from being relitigated and the PLAINTIFF should be estopped – pursuant to the doctrine of collateral estoppel – from raising challenges to either.

23. Therefore, an enforceable arbitration provision exists between the parties.

**b. The Court Issued an Order Compelling the PLAINTIFF to Arbitrate**

24. In addition to holding that the Agreement and its arbitration clause were valid and enforceable, the Court's February 13, 2025 order also granted NIPPON's motion to compel arbitration. Exhibit F at 2. Simultaneously, the Court denied PLAINTIFF's motion to strike the notice of motion to compel arbitration. *Id*. In so doing, the Court declared "that any legitimate further disputes arising out of the [settlement] agreement are indeed subject to arbitration." *Id*. The Court's order compelling arbitration is valid and, pursuant to the doctrine of collateral estoppel as discussed above, not subject to challenge.

25. Therefore, there is a valid and standing order by the Court compelling the PLAINTIFF to arbitrate.

**c. The Arbitration Currently Pending Before the AAA is For a Dispute Arising Out of the Agreement**

26. On January 28, 2025, NIPPON submitted a demand for arbitration due to the

PLAINTIFF's breach of the settlement Agreement. Exhibit B. Specifically, NIPPON asserts that PLAINTIFF's motion to reopen the previous lawsuit violated the Agreement between the parties, whereby the PLAINTIFF had agreed to dismiss her lawsuit against NIPPON, with prejudice, and release NIPPON from all claims and liability related to her long-term disability policy. *Id.* The pending arbitration between the parties is directly related to the Agreement as it addresses PLAINTIFF's breach of the agreement. Therefore, the pending arbitration is a dispute arising out of the Agreement.

27. Consequently, the Court's February 13, 2025 order compelling arbitration applies to the arbitration currently pending before the AAA.

**d. PLAINTIFF Has Continuously Refused to Submit to Arbitration**

28. PLAINTIFF has a demonstrated record of refusing to submit to the arbitration pending before the AAA. Moreover, she has engaged in bad faith conduct attempting to deliberately delay and undermine the proceedings.

29. Initially, PLAINTIFF submitted an objection to arbitration on January 31, 2025. Exhibit D. PLAINTIFF's objection raised substantive disputes based on factual assertions which were demonstrably false – PLAINTIFF claimed that: she was pressured and coerced by her former attorney, Kevin Probst, into signing the Agreement; there was no arbitration agreement between the parties; and that the settlement Agreement between the parties was invalid. *Id.* The Court's February 13, 2025 order determined that none of these claims were true. See Exhibit F.

30. Pursuant to Section R-5 of the Commercial Arbitration Rules, PLAINTIFF was given a deadline of February 14, 2025 to file an answer to the demand for arbitration. Exhibit H at 13-14. Even though Section E-1(a) of the Commercial Arbitration Rules limited PLAINTIFF to one seven day extension of time to respond to the demand for arbitration, NIPPON consented

to extend the deadline to respond by 30 days to March 14, 2025. Exhibit H at 39, Section E-1(a); Exhibit M.

    31.    Instead of responding, the PLAINTIFF then filed a motion to dismiss the arbitration alleging: defective service; due process violations; unauthorized ex parte communications; potential breach of confidentiality; and failure to prevent proper service. Exhibit G. PLAITNIFF submitted her motion despite the fact that the AAA's Commercial Arbitration Rules do not allow parties to submit substantive motions, including motions to dismiss, without leave from the arbitrator. See Exhibit H at 26, R-34(a). Moreover, the arbitrator may only give leave to file a motion if "the moving party has shown that the motion is likely to succeed…" *Id.* The PLAINTIFF never received leave to file a substantive motion. The PLAINTIFF never demonstrated that her motion was likely to succeed. Not only did the PLAINTIFF not receive leave to submit a substantive motion or demonstrate a likelihood of success, but there wasn't even an arbitrator assigned to the case to grant the PLAINTIFF leave at the time she filed her motion on March 14, 2025. As of the date of this filing, the PLAINTIFF still has not submitted an answer to the demand for arbitration.

    32.    On July 7, 2025 the AAA's Administrative Review Council denied the PLAINITIFF's motion to dismiss. Exhibit I. Following the AAA's determination to deny the PLAINTIFF's motion, PLAINTIFF submitted two additional objections. First, PLAINTIFF filed an objection to the AAA's Administrative Review Council's determination authorizing the arbitration to proceed – again baselessly arguing that she had not been properly served. Exhibit J. PLAINTIFF submitted her objection reasserting her claim of improper service despite the AAA's determination that NIPPON had met the AAA's filing requirements by filing its notice of arbitration. Exhibit I. PLAINTIFF was then notified by the AAA on July 15, 2025 that

Administrative Council's determinations are final and not subject to appeal. Exhibit J. She was further advised that she can raise her concerns to the arbitrator once they were appointed. *Id.*

33. Yet again, on July, 22, 2025, PLAINTIFF submitted another objection requesting that the "AAA/ICDR take no further action and halt the progression of this arbitration pending resolution by the U.S. District Court." Exhibit K. In support of her request the PLAINTIFF made multiple demonstrably false statements. The PLAINTIFF falsely asserted that she "[did] not consent to arbitration, in any form, capacity or derivation related to [her] ERISA-governed claim," in direct contradiction to the Court's February 13, 2025 order finding that she had agreed to the settlement Agreement and, by extension, the arbitration provision. Exhibit F. In an audacious display of disingenuity and bad faith, the PLAINTIFF also claimed that the Court had granted PLAINTIFF's motions docketed as numbers 37, 38 and 39 allegedly "confirming the arbitration misconduct." Contrary to the PLAINTIFF's assertions, docket number 39 is a minute entry entered by the Court on April 17, 2025 whereby the Court granted "Plaintiff's motion 38 to withdraw R. 36 only insofar as R. 36 is terminated as withdrawn and has no operative effect … [n]o other relief sought in R.37 and R.38 are granted." Dkt. 39. PLAINTIFF's assertion that her motions docketed as numbers 37 and 38 were granted confirming arbitration misconduct is not just a mischaracterization of fact but a bold-faced lie clearly intended to confuse and mislead the AAA.

34. PLAINTIFF has also attempted to thwart arbitration and circumvent the Court's February 13, 2025, order compelling arbitration by abusing the judicial process in federal court. As part of her Third Amended Complaint, PLAINTIFF asserted a cause of action seeking to invalidate the Agreement – and by extension the arbitration provision and the arbitration itself – pursuant to Federal Rule of Civil Procedure Rule 60(b). Dkt. 80 at 4-5. PLAINTIFF asserted this

cause of action in spite of: i) the Court's February 13, 2025 order denying her motion for the same relief; ii) the judicial doctrine of collateral estoppel and issue preclusion; and iii) in violation of Rule 60's prohibition against motions being filed more than a year after the judgment or order from which the movant seeks relief from was entered. FRCP Rule 60(c)(1).

35. Most recently, the PLAINTIFF has also sought judicial intervention to enjoin the arbitral proceedings by filing an emergency motion for a temporary restraining order (TRO) on July 22, 2025. Dkt. 12 1. Like PLAINTIFF's July 22, 2025, her application for a TRO is entirely premised on egregious falsehoods. First, the PLAINTIFF repeats her fabricated story, that the Court granted both her motions docketed as numbers 37 and 38 – when in fact the Court only granted docket number 38 to the extent that it withdraw her previous motion docketed as number 36. Dkt 121 at 1; Dkt. 39.

36. Second, the PLAINTIFF, again, baselessly accuses Junko Inaga of issuing a false declaration – claiming that Junko Inaga didn't receive notification of the FedEx delivery of the demand for arbitration on January 30, 2025. Dkt. 121 at 3, ¶ 6. Once again, the PLAINTIFF provides no evidence to refute Ms. Inaga's declaration. And again, PLAINTIFF's claims are refuted by documentary proof, see Exhibit C – FedEx's January 30, 2025 delivery notification sent to Junko Inaga's email. Exhibit C. PLAINTIFF's refusal to accept the reality that the demand for arbitration was delivered to her home on January 30, 2025, despite the overwhelming evidence corroborating the delivery and her own evidence confirming receipt of delivery, is indicative of her larger refusal to comply with the Court's February 13, 2025 order to arbitrate.

37. Finally, the PLAINTIFF's claim of defective notice of the demand for arbitration under the applied rules of arbitration are similarly baseless. In her motion, the PLAINTIFF asserts that "[t]he arbitration filing rests on a demonstrably false foundation, in violation of Rule

13

2 of the ICDR International Arbitration Rules and Administrative Guideline B.3, both of which require valid delivery with confirmed receipt." Dkt. 121 at 1. Yet again, these claims are untrue.

38. As a preliminary matter, the PLAINTIFF cites to the wrong arbitral rules. Pursuant to the Agreement and the initiating letter sent by the AAA, the controlling rules for the arbitration proceedings between the PLAINTIFF and NIPPON are the AAA's Commercial Arbitration Rules, not the ICDR International Arbitration Rules. Paragraph (b) of section R-4 outlines proper notice of the demand for arbitration to the opposing party. Section R-4(b)(iii) states: "[a]ny papers, notices, or process necessary or proper for the initiation of an arbitration under this Rule may be served on a party: a) by mail addressed to the party or its authorized representative at their last known address…" Section R-4(b) authorizes notice by mail and does not require delivery with "confirmed receipt." NIPPON's Counsel has reviewed the entirety of the AAA's Commercial Arbitration Rules and cannot find a single requirement of providing notice with "confirmed receipt."

39. Even an examination of the AAA's International Dispute Resolution Procedures (IDRP), attached as Exhibit L, – the rules incorrectly cited by the PLAINTIFF – does not yield support for the PLAINTIFF's assertions. Exhibit L. There is no Rule 2 in the IDRP. *Id.* Article 2 of the IDRP does refer to notice of Arbitration. Paragraph 1 of Article 2 states: "[t]he party initiating arbitration ("Claimant" shall, in compliant with Article 10, give written Notice of Arbitration to the Administrator and at the same time to the party against whom a claim is being made ("Respondent")." Exhibit L at 14-15, Article 2(1). Article 10 of the IDRP states: "[u]nless otherwise agreed to by the parties or ordered by the arbitral tribunal, all notices and written communications may be transmitted by any means of communication that allows for a record of its transmission including mail … addressed to the party or its representatives at its last-known

14

address, or by personal service." Exhibit L at 19, Article 10. At no point in either Article 2 or Article 10 does the IDRP require a "delivery receipt." And, the method of mail chosen by NIPPON to deliver the demand for arbitration included a record of transmission as indicated by the tracking number associated with the mailing and the delivery confirmation provided by FedEx. Even under the IDRP, the method of notification was compliant with the arbitral rules.

40. As has been consistently demonstrated throughout this litigation, NIPPON mailed the demand for arbitration to the PLAINTIFF on January 29, 2025. The demand for arbitration was delivered to PLAINTIFF's home – 653 Wing Street, Elgin, IL 60123 – at 9:31am on January 30, 2025. Exhibit C. FedEx's delivery confirmation provides documentary proof of delivery and photographic proof as well. *Id.* The notice requirements under Commercial Arbitration Rule R-4(b)(ii) were thereby met by NIPPON. Even the notice requirements under IDRP Article 2 were met by NIPPON. Put simply, PLAINTIFF's claim that the AAA's rules require a "delivery receipt" are fabricated.

41. PLAINTIFF's conduct has not only demonstrated her refusal to abide by the Court's February 13, 2025 order, but also her willingness to assert affirmatively untrue statements in an attempt to avoid compliance.

e. **PLAINTIFF's Complaint Violates the Court's February 13, 2025 Order**

42. In addition to her continued refusal to meaningfully participate in the pending arbitration with NIPPON, the PLAINTIFF has also violated the Court's February 13, 2025 order by asserting a cause of action that is exclusively subject to arbitration pursuant to the parties' Agreement and the Court's order.

43. The Court's February 13, 2025 order expressly states that "any legitimate further dispute arising out [of] the [settlement] agreement [is] indeed subject to arbitration." See Exhibit

F at 2. Disputes "arising out of" the Agreement include challenges to the validity of the Agreement itself. Nevertheless, in her First Amended Complaint – where PLAINTIFF first named NIPPON as a defendant in this action – DELA TORRE asserted a cause of action to "vacate [a] fraudulent settlement." See Dkt. 8 ¶¶ 20–21. In her most recent filing—the Third Amended Complaint, which is also the operative complaint in this case – PLAINTIFF reasserts that same claim, again seeking to vacate the settlement agreement under Rule 60(b)(3) and (b)(6). See Dkt. 80 at 4 ¶¶ 9–13. These claims, by their very nature, arise out of the Agreement and therefore fall squarely within the scope of arbitration as mandated by the Court's order.

44. PLAINTIFF's First and Fourth Causes of Action—alleging breach of fiduciary duty and retaliation, respectively – are likewise subject to the Court's February 13, 2025 order compelling arbitration. Both claims are brought under ERISA, specifically §§ 502(a)(3) and 510. See Dkt. 80 at 4–5 ¶¶ 1–5, 13–15. These ERISA claims directly relate to PLAINTIFF's long-term disability claim and policy, both of which were expressly released under the terms of the settlement Agreement. Because the Agreement governs all claims arising out of or relating to the PLAINTIFF's long-term disability benefits administered under ERISA, and because PLAINTIFF's release is binding as to all such ERISA-based claims, these causes of action fall within the scope of the Agreement. Pursuant to the Court's February 13, 2025 order – requiring that any dispute arising out of the Agreement be submitted to arbitration – these claims are subject to arbitration and must be dismissed or stayed accordingly.

45. Accordingly, the first, third and fourth, causes of action in the PLAINTIFF's operative complaint are blatant violations of the Court's February 13, 2025 order compelling arbitration for all disputes arising out of the Agreement.

    **f. PLAINTIFF Has Violated the Court's February 13, 2025 Order**

46. In PLAINTIFF's previous lawsuit against NIPPON, NIPPON moved the Court to compel the PLAINTIFF to arbitrate. *Dela Torre v. Nippon Life Insurance Company of America*, 1:22-cv-07059 at Dkts. 50-51. By order dated February 13, 2025, the Court granted NIPPON's motion. Exhibit F at 2. The Court concluded: "[h]aving found the [settlement] agreement enforceable, the court concludes that any legitimate further disputes arising out of the agreement are indeed subject to arbitration." *Id.*

47. By her actions, the PLAINTIFF has demonstrated a clear intent to disregard the Court's order to arbitrate. She has refused to meaningfully participate in the arbitral process. Instead, she has submitted multiple objections in which she has knowingly asserted falsehoods; filed a motion to dismiss in violation of the arbitral rules; and applied for an emergency TRO to enjoin the arbitral proceedings based on demonstrably false statements. She has also asserted causes of action in the present lawsuit which are subject to arbitration and within the scope of the Court's order compelling arbitration.

48. To hold a party in civil contempt of court, their violation of a court order does not have to be willful. *Goluba* at 1037; citing *Stotler* at 1163. A Court "may find a party in civil contempt if that party has not been reasonably diligent and energetic in attempting to accomplish what was ordered (internal quotations omitted)." *Goluba* at 1037; citing *Stotler* at 1163. By every objective measure, the PLAINTIFF has violated the Court's February 13, 2025 order. The Court's order was clear: 1) the parties are compelled to arbitrate; and 2) all disputes arising out of the settlement Agreement are subject to arbitration. Exhibit F at 2. As established, the PLAINTIFF has refused to arbitrate and has not meaningfully engaged with the arbitral process for the dispute pending with the AAA. The PLAINTIFF has also asserted multiple causes of action in her present lawsuit which are subject to arbitration and the Court's order to arbitrate.

Even though willfulness is not an element for consideration, its presence – as demonstrated by the PLAINTIFF's pattern of behavior to avoid, delay and evade arbitration – adds weight to the obviousness of her violation and the need to hold her accountable.

49. Therefore, the PLAINTIFF has clearly violated the Court's February 13, 2025 order and should be held in civil contempt of Court.

## V. CONCLUSION

50. For all of the aforementioned reasons stated herein, NIPPON respectfully requests that the Court enforce its February 13, 2025 order compelling the PLAINTIFF to arbitrate, by holding DELA TORRE in civil contempt of Court pursuant to 18 U.S.C. § 401(3) until such time as she: 1) submits and meaningfully engages in the arbitral process for the current dispute between her and NIPPON pending with the AAA; and 2) withdraws or dismisses the first, third and fourth causes of action asserted within her Third Amended complaint.

51. NIPPON also respectfully requests that it be awarded costs and attorney's fees for expenses associated with this motion and the PLAINTIFF's non-compliance with the Court's order, and for any other relief the Court deems just, necessary and proper.

Dated: July 28, 2025

Respectfully submitted,

_____
Justin Wax Jacobs
Attorney *Pro Hac Vice* for the Defendant
Nippon Life Insurance Company of
America 666 Third Avenue, Suite 2201
New York, New York 10017
Tel: 646-630-4923
Fax: 212-867-3057

**CERTIFICATE OF SERVICE**

I, Justin Wax Jacobs, hereby certify on July 28, 2025, I caused a true and correct copy of the foregoing Affidavit in Support of Nippon Life Insurance Company of America's Motion to Enforce the Court's February 13, 2025 Order Compelling Arbitration and Holding the Plaintiff in Contempt of Court Pursuant to 18 U.S.C. § 401(3), and all exhibits attached therein, to be filed electronically with the Clerk of Court via the Court's CM/ECF system and thereby served upon all of the named parties or their representatives.

_/s/ Justin Jacobs_
Justin Wax Jacobs
Attorney *Pro Hac Vice* for the Defendant
Nippon Life Insurance Company of America