**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

GRACIELA DELA TORRE,                                    Case No.: 1:25-cv-01483

                        Plaintiff-Counterclaim
                        Defendant,

            v.

DAVIES LIFE & HEALTH, INC., et al

                        Defendants,

            v.

OPENAI, INC.,

                        Counterclaim
                        Defendant.

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

## NIPPON LIFE INSURANCE COMPANY OF AMERICA'S ANSWER AND COUNTERCLAIMS

Defendant, NIPPON LIFE INSURANCE COMPANY OF AMERICA (hereinafter referred to as the

"DEFENDANT" or "NIPPON"), by its undersigned counsel answers Plaintiff, GRACIELA DELA TORRE

(hereinafter referred to as the "PLAINTIFF" or "DELA TORRE"), complaint as follows:


### RESPONSES TO THE COMPLAINT'S ALLEGATIONS

NIPPON responds to PLAINTIFF's pleadings under the sections "Jurisdiction and Venue," "Parties," and

"Factual Background" of her complaint as follows:

1.  NIPPON admits the allegations in paragraph 1 of the complaint which state this Court has subject

    matter jurisdiction for claims which arise under ERISA; HIPAA; FRCP Rule 60; the Americans

    with Disabilities Act; Fifth Amendment; and Fourteenth Amendment. NIPPON denies the rest of

    paragraph 1.

1

2. NIPPON admits the allegations of paragraph 2.

3. NIPPON admits that the allegations in paragraph 3 of the complaint which allege that DELA TORRE is a resident of Illinois and former employee of Nippon Express USA. NIPPON denies the rest of paragraph 3.

4. NIPPON admits that the PLAINTIFF was a participant in the Nippon Express USA Welfare Benefits Plan, Group Long Term Disability Benefit Plan (hereinafter referred to as the "Nippon Express Plan," and that NIPPON insured the Nippon Express Plan. NIPPON denies the remaining allegations in paragraph 4.

5. NIPPON denies the allegations in paragraph 5.

6. NIPPON lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 6.

7. NIPPON admits that the PLAINTIFF received long term disability benefits under the terms of the Nippon Express Plan and that the PLAINTIFF's benefits were terminated effective November 30, 2021. NIPPON states that it is not clear what "ROR" means and therefore denies the remaining allegations of paragraph 7.

8. NIPPON denies the allegations in paragraph 8.

9. NIPPON admits that the PLAINTIFF that the PLAINTIFF's benefits under the terms of the Nippon Express Plan were terminated on November 30, 2021. NIPPON denies the remaining allegations in paragraph 9.

10. NIPPON denies the allegations in paragraph 10.

11. NIPPON denies the allegations in paragraph 11.

12. NIPPON admits that the Defendant, Davies Life & Health (hereinafter referred to as "DAVIES") reviewed a surveillance report and upheld its decision to terminate the PLAINTIFF's benefits. NIPPON denies the remaining allegations in paragraph 12.

2

13. NIPPON admits upon information and belief that the PLAINTIFF underwent surgery on February 28, 2022. NIPPON lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 13.

14. NIPPON denies the allegations in paragraph 14.

15. NIPPON admits that the PLAINTIFF entered into a settlement agreement with NIPPON on January 2, 2024. NIPPON denies the remaining allegations in paragraph 15.

16. NIPPON lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16.

17. NIPPON denies the allegations in paragraph 17.

18. NIPPON denies the allegations in paragraph 18.

19. NIPPON admits to filing a demand for arbitration with the American Arbitration Association claiming $90,000 in damages on January 21, 2025. NIPPON denies the remaining allegations in paragraph 19.

20. NIPPON denies the allegations in paragraph 20.

21. NIPPON admits that DAVIES' attorney sent an email to Susan Lenburg on June 3, 2025. NIPPON denies the remaining allegations in paragraph 21.

22. NIPPON admits that the Court's June 12, 2025 minute entry (Dkt. 74) speaks for itself. NIPPON denies the remaining allegations of paragraph 22.

NIPPON responds to PLAINTIFF's pleadings under the section "Claims for Relief" as follows:

COUNT I

23. NIPPON lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1.

24. NIPPON denies the allegations in paragraph 2.

25. NIPPON denies the allegations in paragraph 3.

26. NIPPON lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4.

27. NIPPON admits that the PLAINTIFF requests the relief stated in paragraph 5, but denies that the PLAINTIFF is entitled to the relief sought.

COUNT II

28. NIPPON denies the allegations in paragraph 6.

29. NIPPON lacks knowledge or information sufficient to form a belief as to the truth of whether the PLAINTIFF authorized disclosures referred to in paragraph 7. NIPPON denies the remaining allegations in paragraph 7.

30. NIPPON denies the allegations in paragraph 8.

COUNT III

31. NIPPON denies the allegations in paragraph 9.

32. NIPPON denies the allegations in paragraph 10.

33. NIPPON denies the allegations in paragraph 11.

34. NIPPON denies the allegations in paragraph 12.

35. NIPPON admits the PLAINTIFF seeks to vacate the January 2, 2024 settlement agreement under FRCP Rule 60, but denies that the PLAINTIFF is entitled to the relief sought.

COUNT IV

36. NIPPON admits that it filed a demand for arbitration with the American Arbitration Association claiming $90,000 in damages. NIPPON denies the remaining allegations in paragraph 13.

37. NIPPON denies the allegations in paragraph 14.

38. NIPPON denies the allegations in paragraph 15.

COUNT V

39. NIPPON denies the allegations in paragraph 16.

40. NIPPON denies the allegations in paragraph 17.

41. NIPPON denies the allegations in paragraph 18.

COUNT VI

42. NIPPON denies the allegations in paragraph 19 implying that the document marked as Dkt. 66 was improperly docketed. NIPPON admits that the PLAINTIFF is seeking to strike Dkt. 66 as improperly docketed, but denies that she entitled to the relief sought.

43. NIPPON admits that the complaint describes relief the PLAINTIFF seeks in this matter. NIPPON denies that the PLAINTIFF is entitled to the relief sought.

## AFFIRMATIVE DEFENSES

NIPPON, without prejudice to its previous answers or subsequent counterclaims, states the following Affirmative Defenses:

*Res Judicata*

44. The claims PLAINTIFF asserts against NIPPON are barred by the doctrine of res judicata.

*Collateral Estoppel*

45. The claims PLAINTIFF asserts against NIPPON are barred by the doctrine of collateral estoppel (issue preclusion).

*Statute of Limitations*

46. The ERISA claims asserted by the PLAINTIFF against NIPPON are barred by the statute of limitations since the PLAINTIFF filed her cause of action more than three years after she had actual knowledge of the alleged breach.

47. The claims for relief under Federal Rules of Civil Procedure Rule 60 are barred by the statute of limitations since the PLAINTIFF filed her cause of action more than a year after the entry of the judgment and/or order upon which she seeks to vacate.

48. The claims PLAINTIFF asserts against NIPPON are barred by the statute of limitations.

*Failure to State a Claim*

49. The complaint fails to state a claim upon which relief can be granted.

*Barred by Contract*

50. The claims asserted by the PLAINTIFF are barred by contract pursuant to a settlement agreement executed by the PLAINTIFF on January 2, 2024.

*Barred by Waiver*

51. The claims asserted by the PLAINTIFF are barred by PLAINTIFF's irrevocable waiver of the claims pursuant to a settlement agreement executed by the PLAINTIFF on January 2, 2024.

*Barred by Release*

52. The claims asserted by the PLAINTIFF against NIPPON are barred due to the PLAINTIFF releasing NIPPON of all liability pursuant to the settlement agreement executed by the PLAINTIFF on January 2, 2024.

*Subject to Binding Arbitration*

53. The claims asserted by the PLAINTIFF against NIPPON are subject to a binding arbitration clause pursuant to the settlement agreement executed by the PLAINTIFF on January 2, 2024 and is therefore barred.

*Failure to Join a Necessary Party*

54. The claims asserted by the PLAINTIFF are barred due to her failure to join Kevin Probst as a necessary party to this action.

*Equitable Estoppel*

55. The claims asserted by the PLAINTIFF are barred due to equitable estoppel.

*Promissory Estoppel*

56. The claims asserted by the PLAINTIFF are barred due to promissory estoppel.

*Judicial Estoppel*

57. The claims asserted by the PLAINTIFF are barred due to judicial estoppel.

*Fraud*

58. The claims asserted by the PLAINTIFF are barred because the PLAINTIFF engaged in fraud against NIPPON and made fraudulent statements to obtain benefits under the Nippon Express Plan.

## COUNTERCLAIMS

NIPPON, by its undersigned counsel, for its counterclaims against the PLAINTIFF-Counterclaim Defendant, DELA TORRE, and the Counterclaim Defendant (hereinafter referred to as "OPENAI") alleges as follows:

JURISDICTION

59. The Court has subject matter jurisdiction over NIPPON's counterclaims under 28 U.S.C. § 1367(a) because they are so related to the PLAINTIFF's claims that they form part of the same case or controversy under Article III of the United States Constitution.

60. The Court also has diversity jurisdiction over NIPPON's counterclaims pursuant to 28 U.S.C. § 1332 since the Parties are citizens of different states – DELA TORRE is a citizen of Illinois; NIPPON is a incorporated in Iowa; and OPENAI is incorporated in Delaware – and the amount in controversy exceeds $75,000.

VENUE

61. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) in that the PLAINTIFF, DELA TORRE, resides in this district; and under 28 U.S.C. § 1391(b)(2) in that a substantial part of th events or omissions giving rise to the counterclaims occurred in this district.

PARTIES

62. NIPPON is a domestic insurance company incorporated in the state of Iowa with its principal place of business in New York, New York. NIPPON sells group, employer sponsored, insurance for products including health, dental, vision, short-term disability, and long-term disability (LTD)

coverage. As an insurance carrier, NIPPON relies heavily on its impeccable reputation to stand out in a crowded and competitive field within an industry where the trustfulness and repute of a company's brand is a key driver of sales and the retention of clients.

63. NIPPON is a subsidiary of Nippon Life Insurance Company, commonly known and referred to as Nissay, a foreign insurance company which operates in, and is organized under the laws of, Japan. As one of Japan's oldest life insurance carriers, Nissay's name is strongly associated with financial strength, regulatory discipline, honest business practices, and reliability, values that resonate strongly in the Japanese market and are core to the company's brand. As a Japanese company, a social, as well as a commercial, emphasis is placed on maintaining a reputation for honesty and integrity. Accusations of impropriety, regardless of their legitimacy, are seen as dishonorable and can have a severe and lasting impact in the Japanese market.

64. As a subsidiary, NIPPON's reputation reflects upon Nippon Life Insurance Company. This reflection is amplified by the fact that NIPPON shares the name of its parent and is seen by many as the flagship of, and therefore the representative of, Nippon Life Insurance Company in the United States.

65. PLAINTIFF-COUNTERCLAIM DEFENDANT, DELA TORRE, is a resident of Eglin, Illinois. DELA TORRE is not a licensed attorney in the state of Illinois or any other jurisdiction in the United States.

66. COUNTERCLAIM DEFENDANT, OPENAI, is an artificial intelligence ("AI") research, development, and deployment company headquartered in San Francisco, California. OAI develops and operates AI language models, including the GPT (Generative Pre-trained Transformer) series, which powers ChatGPT. ChatGPT is accessible to users via the internet through both free and paid subscription plans.

67. OPENAI actively markets its products in the Northern District of Illinois. OPENAI systemically

and continuously directs its advertisements and engages users within the Northern District of Illinois.

68. OPENAI makes its products and services available to users throughout the United States, including residents of Illinois. Users in the Northern District of Illinois can access and use ChatGPT via OpenAI's website and associated platforms. OpenAI also promotes its services online through broadly targeted digital channels, which are visible to individuals in the Northern District of Illinois.

LAW

a. *Abuse of Process*

69. Pursuant to the Second Restatement of Torts "[o]ne who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." Restatement (Second) of Torts § 682. Commentary on the Restatement notes that the gravamen of the misconduct "is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." Restatement (Second) of Torts § 682 (a).

70. "Under Illinois law, the only elements necessary to plead a cause of action for abuse of process are: 1) the existence of an ulterior purpose or motive and; 2) some act in the use of legal process not proper in the regular prosecution of the proceedings (internal quotations omitted)." *Pace v. Timmermann's Ranch and Saddle Shop Inc.*, 795 F.3d 748, 757 (7th Cir. 2015); citing *Kumar v. Bornstein*, 354 Ill.App.3d 159, 290 Ill.Dec 100, 820 N.E.2d 1167, 1173 (2004). The essence of the tort of abuse of process lies in the misuse of the power of the court. See *International Motor Contest Ass'n, Inc. v. Staley*, 434 F.Supp.2d 650 (N.D. Iowa 2006) (applying Iowa law) (holding that the tort of abuse of process is an improper purpose for using the legal process).

71. Courts in the United States have long held that the liability for an abuse of process claim extends to

all who knowingly participated, aided, or abetted the abuse, as well as those who advised or consented to the unlawful acts. See *Broadmoor Apartments of Charleston v. Horwitz*, 306 S.C. 482 (1991) (holding that individuals who advise or consent to unlawful acts of abuse of process are liable as joint tort-feasors); *Valles v. Silverman*, 135 N.M. 91 (Ct. App. 2003) (holding that a non-litigant can be held liable for abuse of process in an underlying civil lawsuits); *Alexander v. Unification Church of America,* 634 F.2d 673 (2nd Cir. 1980) (holding that a person is liable for abuse of process if they procure the initiation of a proceeding by a third party); *Hewes v. Wolfe*, 74 N.C.App. 610 (1985) (upheld a lower court ruling finding an attorney liable of abuse of process through a partnership action).

b. *Unlicensed Practice of Law*

72. 705 ILCS 205/1 states that "[n]o person shall be permitted to practice as an attorney or counselor at law within this State without having previously obtained a license for that purpose from the Supreme Court of this State." 705 ILCS 205/1 § 1. "Any person practicing … or holding himself or herself out to provide legal services within this State, either directly or indirectly, without being licensed to practice as herein required, is guilty of contempt of court…" *Id.* "Illinois courts have held that the practice of law is not limited to court appearances, but also includes services rendered out of court." *In re Herrera,* 194 B.R. 178, 191 (Bnkr.N.D.Ill 1996); citing *People v. Peters,* 10 Ill.2d 577, 581–82, 141 N.E.2d 9 (1957). "The Illinois Supreme Court has defined the practice of law as constituting the preparation of pleadings, and other papers incident to actions and special proceedings, and the management of such actions and proceedings on behalf of clients before judges and courts, and, in addition, conveyancing, the preparation of legal instruments of all kinds, and, in general, all advice to clients, and all action taken for them in matters connected with the law (internal quotations omitted)." *In re Herrera* at 191; citing *People ex rel. Courtney v. Association of Real Estate Taxpayers of Illinois,* 354 Ill. 102, 109–110, 187 N.E. 823 (1933).

73. Local Rule 83.10 states outlines the qualifications of applicants for admission to the bar of the Northern District of Illinois as requiring them to "be a member in good standing of the bar of the highest court of any state of the United States or of the District of Columbia" and "be honest and of good moral character, and shall exhibit general fitness to practice law." Northern District of Illinois L.R. 83.10(a).

74. Federal Courts have inherent powers "governed not by rule or statute but by the control necessarily vested in the courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *U.S. v. Johnson*, 327 F.3d 554, 560 (7th Cir. 2003); citing *Chambers v. NASCO,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); quoting *United States v. Hudson,* 11 U.S. 32, 34, 3 L.Ed. 259 (1812); *Anderson v. Dunn,* 19 U.S. 204, 227, 5 L.Ed. 242 (1821); *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630–631, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). "Key among the inherent powers incidental to all courts is the authority to control admission to its bar and to discipline attorneys who appear before it (internal quotations omitted)." *Johnson* at 560; citing *Chambers* at 43; *Ex parte Burr*, 22 U.S. 529, (1824). "It follows logically that a federal court's power to regulate and discipline attorneys appearing before it extends to conduct by nonlawyers amounting to practicing law without a license." *Johnson* at 560.

75.

## FACTS

a. *ChatGPT*

76. ChatGPT is an artificial intelligence application developed and operated by OPENAI, which utilizes large language models (LLMs) to generate human-like text responses based on user input. It can perform a variety of language-based tasks, including answering questions, drafting content, summarizing text, writing code, and engaging in conversational dialogue. The service is accessible via the internet and is offered through both free and paid subscription plans.

77. Users can access ChatGPT by visiting chat.openai.com and creating a free OPENAI account. Once logged in, they can start typing questions or prompts into a chat interface. ChatGPT responds in natural language, enabling users to engage in conversation, get help with writing, ask for explanations, or perform a variety of tasks. A paid version called ChatGPT Plus is also available, which provides access to more advanced capabilities and models.

78. ChatGPT is not an attorney. Although it was able to pass the Uniform Bar Examination with a combined score of 297, it has not been admitted to practice law in any jurisdiction Court within the United States.

79. ChatGPT is not a member of the Illinois Bar. ChatGPT is not a registered attorney in the state of Illinois. ChatGPT has not been admitted to practice in the United States District Court for the Northern District of Illinois.

80. ChatGPT has a documented history of generating fake or non-existent legal citations, otherwise known as "hallucinating." See *Mata v. Avianca, Inc.*, 678 F.Supp.3d 443 (S.D.N.Y 2023); *Park v. Kim*, 91 F.4th 610 (2nd Cir. 2025).

81. ChatGPT drafts and promulgates legal documents:

can you help me draft a motion for a default judgment in the northern
district of Illinois for a defendant, ABC Corp, who was required to file
an answer to a complaint issued by Nippon Life Benefits on June 30,
2025, but failed to do so?

Certainly. Below is a **sample Motion for Entry of Default Judgment** tailored for the **Northern District of
Illinois** based on the Federal Rules of Civil Procedure. This version assumes that proper service has been
made, the defendant failed to appear or respond, and you are now seeking default judgment under **Fed. R.
Civ. P. 55.**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF ILLINOIS**

NIPPON LIFE BENEFITS,
    Plaintiff,

v.

ABC CORP.,
    Defendant.

Case No. [Insert Case No.]

**PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT
ABC CORP.**

Plaintiff Nippon Life Benefits ("Plaintiff"), by and through its counsel, respectfully moves this Court for entry
of default judgment against Defendant ABC Corp. ("Defendant") pursuant to Rule 55(b) of the Federal Rules
of Civil Procedure. In support of this Motion, Plaintiff states as follows:

1. On or about June 30, 2025, Plaintiff filed and properly served its Complaint on Defendant ABC Corp.
   (ECF No. [Insert Docket Entry]).

2. Pursuant to Rule 12(a)(1)(A)(i) of the Federal Rules of Civil Procedure, Defendant was required to file an
   answer or otherwise respond to the Complaint within 21 days of service—i.e., by no later than July 22,
   2025.

3. As of the date of this motion, Defendant has failed to appear, answer, or otherwise respond to the
   Complaint, and the time for doing so has expired.

4. On [Insert Date], the Clerk of Court entered default against Defendant pursuant to Fed. R. Civ. P. 55(a)
   for failure to plead or otherwise defend. (ECF No. [Insert Clerk's Entry of Default Docket Entry]).

5. Plaintiff now seeks entry of default judgment under Rule 55(b), as Defendant has failed to respond or
   appear in this matter, and Plaintiff is entitled to judgment on the claims set forth in the Complaint.

6. Plaintiff seeks judgment in the amount of $[Insert Amount], plus interest, costs, and attorney's fees as
   permitted by law and set forth in the attached affidavit(s).

7. This Court has subject matter jurisdiction under [e.g., 28 U.S.C. § 1332], and venue is proper in this
   District pursuant to [cite venue statute, e.g., 28 U.S.C. § 1391].



Attach    Search                 Voice

ChatGPT can make mistakes. Check important info.

(ECF No. [Insert Docket Entry]).

2. Pursuant to Rule 12(a)(1)(A)(i) of the Federal Rules of Civil Procedure, Defendant was required to file an answer or otherwise respond to the Complaint within 21 days of service—i.e., by no later than July 22, 2025.

3. As of the date of this motion, Defendant has failed to appear, answer, or otherwise respond to the Complaint, and the time for doing so has expired.

4. On [Insert Date], the Clerk of Court entered default against Defendant pursuant to Fed. R. Civ. P. 55(a) for failure to plead or otherwise defend. (ECF No. [Insert Clerk's Entry of Default Docket Entry]).

5. Plaintiff now seeks entry of default judgment under Rule 55(b), as Defendant has failed to respond or appear in this matter, and Plaintiff is entitled to judgment on the claims set forth in the Complaint.

6. Plaintiff seeks judgment in the amount of $[Insert Amount], plus interest, costs, and attorney's fees as permitted by law and set forth in the attached affidavit(s).

7. This Court has subject matter jurisdiction under [e.g., 28 U.S.C. § 1332], and venue is proper in this District pursuant to [cite venue statute, e.g., 28 U.S.C. § 1391].

WHEREFORE, Plaintiff respectfully requests that this Court enter default judgment in favor of Plaintiff and against Defendant ABC Corp. in the amount of $[Insert Amount], together with pre-judgment and post-judgment interest, costs, attorney's fees, and such other and further relief as the Court deems just and proper.

Dated: July [Insert Date], 2025
Respectfully submitted,

[Your Name]
[Your Law Firm Name]
[Address]
[Phone]
[Email]
Attorney for Plaintiff, Nippon Life Benefits

---

### Attachments (as needed):

- Affidavit in Support of Damages
- Clerk's Entry of Default (Rule 55(a))
- Proof of Service
- Proposed Order

Would you like me to also draft the **proposed order, affidavit of damages,** or a **declaration in support of the motion**?





Ask anything

Attach     Search                                      Voice

ChatGPT can make mistakes. Check important info.

82. ChatGPT conducts legal research:



ChatGPT ⌄

Log in

Issue: Contractual limitations periods in ERISA long-term disability claims — enforceability and start-date.

Holding: ERISA participants may contractually agree to limitations periods (even those that start before accrual), so long as they are reasonable and not contrary to statute. While not a fiduciary-duty case per se, it governs claim-procedures handled by insurers under ERISA.

📌 **Foundational ERISA fiduciary law (general, insurer-relevant):**

- **Kearney v. Standard Insurance Co.** (9th Cir.): Insurer acting as plan administrator is a fiduciary under ERISA and must meet the high standard expected of fiduciaries (not mere contract parties).
- **Pre-existing cases on service providers:** Brink v. DaLesio and Lay Trucking Co. where insurance agents were found to be fiduciaries due to exercising discretionary authority.
- **Nationwide Mut. Ins. Co. v. Darden** (U.S. Supreme Court, 1992): The definition of "employee" (and fiduciary) under ERISA incorporates agency-law principles.

### 8. Montanile v. Board of Trustees of National Elevator Industry Health Benefit Plan (U.S. Supreme Court, 2016)

Issue: Can a fiduciary recover benefit payments from a beneficiary's general assets under subrogation under ERISA §502(a)(3)?

Holding: Fiduciaries may enforce liens only against funds traceable to the ERISA payment—not against untraceable general assets. This affects insurers seeking reimbursement from beneficiaries.

- Related landmark: **Sereboff v. Mid Atlantic Medical Services, Inc.** (2006) held that an ERISA fiduciary may recover medical costs from specifically identified settlement proceeds, as an equitable lien.

📄 **Summary Table**

| Case | Court / Year | Role of Insurer | Fiduciary Duty Held | Key Takeaway |
|---|---|---|---|---|
| Skelton v. Radisson | 8th Cir. 2022 | Enrollment + eligibility | Yes | Must maintain accurate enrollment systems |
| Parmenter v. Prudential | 1st Cir. 2024 | Premium rate setting | Yes | Rate increases under ERISA plan can trigger fiduciary duty |
| Leimkuehler | 7th Cir. 2013 | Administering investment platform | No | Operating annuity platform isn't fiduciary administration |
| Technibilt | D. N.C. 2020 | Stop-loss claim submissions | Yes | Insurer as administrator of claims owed duty to submit timely |
| McCravy | S.D. Tex. | Claims handling / enrollment | Acknowledged risk | Relief limited—highlights systemic gaps in enforcement |
| Weaver | D. Ohio | Benefit denial | Yes (most ERISA) | State claims preempted—only ERISA statutory remedies available |
| Heimeshoff | SCOTUS 2013 | Claims admin procedures | N/A fiduciary focus | Contractual limitations are enforceable under ERISA |
| Kearney | 9th Cir. | Plan administrator | Yes | Insurer-administrator must act with utmost loyalty |
| Montanile / Sereboff | SCOTUS 2006, 2016 | Subrogation/recovery | Yes | Fiduciaries limited to equitable recovery of identifiable funds |

✅ **Guidance & Implications**

- When insurers exercise **discretionary authority** over plan administration—for enrollment, claims processing, rate setting—they are more likely to be deemed ERISA fiduciaries.
- Courts have enforced duties in systems failures and premium misadministration (e.g. **Skelton**, **Parmenter**).
- Courts limit remedies: ERISA generally does **not** allow compensatory damages beyond equitable relief or premium refunds. ERISA §502(a)(2)/(a)(3) is the exclusive enforcement mechanism.
- In **subrogation** contexts, like **Sereboff** and Montanile, fiduciaries may pursue recovery only from traceable funds, not general assets.

If you're looking for more depth on any specific case—such as procedural background, appeals, or obiter dicta—feel free to ask!

🗄 W ▶🌐 Sources



Ask anything

⌖ Attach   ⊕ Search                                    ✛ Voice

ChatGPT can make mistakes. Check important info.

83. ChatGPT provides legal analysis:

7/15/25, 11:10 AM                    ERISA Fiduciary Duty Breach

✎                        ChatGPT ⌄                           Log In

based on existing case law, can you provide an analysis of an
argument asserting that an insurance company breached its fiduciary
duty under ERISA when it failed to properly monitor one of its vendors
who violated Illinois state law?

Yes, I can provide an analysis of such an argument. Below is a structured overview, incorporating relevant
ERISA fiduciary principles and case law that could support (or challenge) the argument that an insurance
company breached its fiduciary duty under ERISA by failing to properly monitor a vendor that violated
Illinois state law.

**Legal Framework**

**ERISA Fiduciary Duties**

Under the Employee Retirement Income Security Act of 1974 (ERISA), fiduciaries must:

- Act solely in the interest of plan participants and beneficiaries (29 U.S.C. § 1104(a)(1)).
- Carry out duties with the care, skill, prudence, and diligence of a prudent person familiar with such
  matters (the "prudent man" standard).
- Diversify plan investments to minimize risk.
- Follow plan documents to the extent they are consistent with ERISA.

The duty to monitor service providers has been recognized by courts as part of a fiduciary's responsibilities.

**Argument Structure**

**1. Insurance Company as Fiduciary Under ERISA**

First, the insurance company must qualify as a fiduciary with respect to the conduct at issue. Under 29 U.S.C.
§ 1002(21)(A), a person is a fiduciary to the extent that:

- They exercise discretionary authority or control over plan management or assets, or
- Have discretionary responsibility in the administration of the plan.

If the insurer had discretion over plan management or vendor selection, it could be held to ERISA fiduciary
standards.

Relevant Case Law:

- *Pegram v. Herdrich*, 530 U.S. 211 (2000): Fiduciary status depends on the function performed.
- *Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463 (7th Cir. 2007): Held
  that administrative service providers are not fiduciaries unless they have discretion over plan decisions.

↓

**2. Breach of Duty to Monitor Vendor**



Ask anything

◎ Attach    ⊕ Search                                    ⦚⊩ Voice

ChatGPT can make mistakes. Check important info.

https://chatgpt.com/?utm_source=google&utm_medium=paidsearch_brand&utm_campaign=GOOG_C_SEM_GBR_Core_CHT_BAU_ACQ_PER_MIX…    1/1

17

✎                                                    ChatGPT ⌄                                          Log In

### 3. Vendor's Violation of Illinois State Law

The violation of Illinois law by the vendor (e.g., in billing, claim processing, or data privacy) could support an inference that the insurer failed in its monitoring duties. If this misconduct harmed plan participants, the fiduciary's failure to detect or act on it could be actionable.

### 4. Causation and Harm to Plan Participants

Under ERISA § 409(a) (29 U.S.C. § 1109), a fiduciary who breaches a duty is liable for losses caused by the breach. The plaintiff must show:

- That the breach (failure to monitor) occurred.
- That it caused losses to the plan or participants.

If the vendor's misconduct led to excessive fees, denial of valid claims, or harm to benefits due under the plan, and the insurer's failure to act allowed this to continue, causation can be established.

## Counterarguments and Defenses

- **Lack of fiduciary status**: The insurer may argue that it acted in a non-fiduciary capacity (e.g., merely processing claims or following plan sponsor instructions).
- **Delegation Defense**: Under ERISA, fiduciaries can delegate responsibilities but must prudently monitor the delegation.
- **No causation or harm**: The insurer could argue that the vendor's violation did not materially harm the plan or that harm was unforeseeable.

## Conclusion

The success of an ERISA breach-of-fiduciary-duty claim against an insurer for failing to monitor a vendor hinges on:

1. Establishing the insurer's fiduciary status regarding vendor oversight.
2. Showing a failure to meet the prudent monitoring standard.
3. Proving that this failure caused harm to the plan or its participants.

The argument would likely draw support from *Tibble*, *Howell*, and similar fiduciary-monitoring cases. The Illinois law violation by the vendor could be a factual linchpin demonstrating negligence in oversight, thereby supporting the ERISA claim.

Would you like a sample complaint or memorandum based on this theory?



Ask anything

ⓐ Attach   ⊕ Search                                                          ⵙ Voice

ChatGPT can make mistakes. Check important info.

## 84. ChatGPT gives legal advice:

⌨                                      ChatGPT ∨                                    Log in

> can you provide direction and/or advice on how to vacate a previous
> order by the U.S. district court for the northern district of Illinois
> pursuant to the federal rules of civil procedure?

Yes, I can guide you through the general process of vacating a previous order issued by the U.S. District Court for the Northern District of Illinois under the **Federal Rules of Civil Procedure (FRCP)**. The specific steps will depend on the type of order you are seeking to vacate and the circumstances surrounding it.

---

☑ **Step-by-Step: Motion to Vacate a District Court Order**

**1. Identify the Basis for Vacating the Order**
Under the FRCP, several rules allow a party to request that a court vacate or set aside an order. The most common bases include:

**FRCP 60: Relief from a Judgment or Order**

- **Rule 60(a)** – *Clerical Mistakes*: Correcting minor errors arising from oversight or omission.
- **Rule 60(b)** – *Relief from Judgment or Order*:
  A party may be relieved for the following reasons:
  1. Mistake, inadvertence, surprise, or excusable neglect
  2. Newly discovered evidence
  3. Fraud, misrepresentation, or misconduct by the opposing party
  4. The judgment is void
  5. The judgment has been satisfied, released, or discharged
  6. *Any other reason* that justifies relief

  **Note:** A motion under Rule 60(b) must be made **within a reasonable time**, and for reasons (1), (2), and (3), **no more than one year** after the entry of the order or judgment.

---

✎ **2. Draft the Motion to Vacate**

A motion to vacate should contain:

- **Caption and case information** (styled the same as previous filings)
- **Introduction**: Identify the order being challenged and state the rule (e.g., Rule 60(b)(1))
- **Factual background**: What happened, and why you are seeking relief
- **Legal argument**: Cite relevant rule(s), case law, and how your situation qualifies
- **Relief requested**: Clearly ask the court to vacate the specific order



Ask anything

ℐ Attach    ⌕ Search

ChatGPT can make mistakes. Check important info.

7/15/25, 11:15 AM                                    Vacating District Court Order

✎                                                    ChatGPT ∨                                                    Log in

### 📝 3. File the Motion

- File your motion through the court's **CM/ECF system** if you're a registered user.
- If you're a pro se litigant, you may file **in person or by mail**. The **Pro Se Help Desk** for the Northern District of Illinois may be helpful: https://www.ilnd.uscourts.gov/

---

### 📨 4. Serve All Parties

Serve the motion on all parties in accordance with **FRCP 5**. If you're using CM/ECF, it typically handles electronic service automatically.

---

### 📅 5. Wait for a Response and Ruling

- The opposing party usually has **14 days** to respond under **Local Rule 5.3(b)** (unless the court sets a different schedule).
- The court may:
  - Decide on the motion based on the filings
  - Set a hearing
  - Request additional briefing

---

### 📌 Tips

- Be concise, clear, and professional in your filing.
- Stick to the facts and the legal basis.
- Don't re-argue the original case unless the grounds for relief specifically involve errors or newly discovered evidence.
- If you're appealing a final order and the time for appeal has passed, Rule 60 is usually your best route.

---

### 👩‍⚖️ Common Scenarios for Vacating Orders

| Scenario | Rule | Time Limit |
|---|---|---|
| Clerical mistake | Rule 60(a) | No strict time limit |
| Judgment entered by mistake | Rule 60(b)(1) | 1 year |
| Fraud by opposing party | Rule 60(b)(3) | 1 year |
| Void judgment (e.g., lack of jurisdiction) | Rule 60(b)(4) | Reasonable time |
| Judgment satisfied or discharged | Rule 60(b)(5) | Reasonable time |

↓

> Ask anything
>
> 📎 Attach    🌐 Search                                    ᛁᛁᛁ Voice

ChatGPT can make mistakes. Check Important Info.

85. OPENAI – through its program, ChatGPT – drafts legal papers, conducts legal research, provides legal analysis, and gives legal advice without a license to practice law.

b. *Dela Torre's History of Litigation*

86. DELA TORRE was a member participant in an employer's group LTD policy which was issued to Nippon Express USA, DELA TORRE's employer. On or about July 25, 2019, DELA TORRE submitted an LTD claim to NIPPON, alleging that she suffered from carpal tunnel syndrome and epicondylitis, colloquially known as tennis elbow. DELA TORRE further alleged that she was unable to finely manipulate objects with her fingers. DELA TORRE's claim was approved on August 2, 2019.

87. On November 30, 2021, DELA TORRE's benefits were terminated pursuant to a determination that she was no longer disabled per her policy's definition.

88. On December 14, 2022, DELA TORRE initiated the lawsuit *Dela Torre v. Nippon Life Insurance Company of America*, 1-22-cv-07059 by filing a complaint against NIPPON in the Northern District of Illinois. The complaint asserted a single cause of action alleging that NIPPON violated DELA TORRE's LTD policy by terminating her LTD benefits on November 30, 2021.

89. On March 13, 2023 the Parties submitted a Rule 26(f) report whereby both DELA TORRE and NIPPON agreed to complete all discovery related for *Dela Torre v. Nippon Life Insurance Company of America*, 1-22-cv-07059 by February 1, 2024. Additionally, the Parties agreed that all dispositive motion were to be filed by January 15, 2024. On April 10, 2023, the Court issued a scheduling order requiring that all discovery will be commenced in time to be completed by February 1, 2024 and all dispositive motion were to be filed by January 15, 2024.

90. Following discovery, the parties agreed to settle the lawsuit. A settlement agreement (hereinafter referred to as the "Agreement") was executed between the parties on January 2, 2024. As part of the Agreement, DELA TORRE agreed to forever and irrevocably release NIPPPON from any

and all judgements, debts, liabilities, appeals, claims, loses, expenses, demands, damages, suits, controversies, proceedings, actions, and causes of action of any nature known or unknown related to her LTD policy or claim. DELA TORRE also agreed to dismiss case 1-22-cv-07059 against NIPPON with prejudice. In exchange, NIPPON agreed to issue a settlement payment to DELA TORRE.

91. NIPPON issued the settlement payment to DELA TORRE on January 12, 2024. On January 23, 2024 DELA TORRE's attorneys, Kevin Probst and Edward Dabdoub, filed a joint stipulation to dismiss the lawsuit with prejudice. The Court subsequently dismissed the case with prejudice on January 24, 2024.

92. On January 22, 2025, DELA TORRE submitted a notice of appearance form for *pro se* litigants. As a *pro se* litigant, DELA TORRE violated the Agreement by filing a motion to reopen *Dela Torre v. Nippon Life Insurance Company of America*, 1-22-cv-07059. Following her motion to reopen the lawsuit, DELA TORRE filed 21 motions, one subpoena, and eight notices and statements onto the docket.

93. By an Order dated February 13, 2025, the Court denied DELA TORRE's motion to reopen case 1-22-cv-07059. In so ordering, the Court held that "it is apparent that Ms. Dela Torre filed her motion because she has had second thoughts about having entered into the [settlement] agreement … [b]ut her second thoughts are not a valid reason to reopen this lawsuit…" *Dela Torre v. Nippon Life Insurance Company of America*, 1-22-cv-07059, Dkt. 94 (N.D.Ill 2025).

94. PLAINTIFF has conceded that the January 2, 2024 settlement Agreement between DELA TORRE and NIPPON is "final and enforceable." *Dela Torre v. Davies Life & Health, et al*, 1:25-cv-01483, Dkt. 121 at 2 ¶ 2.

95. PLAINTIFF initiated this current lawsuit by filing a complaint on February 12, 2025 against DAVIES LIFE & HEALTH and ALLSUP, LLC. The original complaint asserted causes of

action for: fraudulent misrepresentation; interference with SSDI benefits; breach of fiduciary duty; and violation of Illinois' Consumer Fraud and Deceptive Business Practices Act. Initially, NIPPON was not one of the named Defendants.

96. On February 18, 2025, the Court issued a minute entry noting that DELA TORRE's complaint identified only state law fraud and deceptive-practice claims and failed to assert a federal cause of action. The Court ordered DELA TORRE to file a Jurisdictional Memorandum "explaining why there is [federal] subject matter jurisdiction over the case" by March 12, 2025.

97. Instead of filing a Jurisdictional Memorandum, DELA TORRE amended her complaint to add NIPPON as a named party and reasserted the same claims raised in her previous lawsuit, 1-22-cv-07059, against NIPPON. DELA TORRE amended her complaint by adding NIPPON and reasserted previously disposed of issues to avoid having her current lawsuit dismissed for lack of subject matter jurisdiction.

98. As of the date of this Answer and Counterclaim, DELA TORRE has filed 35 motions, memorandums, petitions and requests (ECF Docket Numbers: 22, 26, 30, 32, 36, 37, 38, 47, 50, 54, 57, 58, 63, 68, 69, 72, 73, 75, 76, 78, 81, 83, 92, 93, 94, 95, 96,104, 110, 115, 116, 117, 118, 121, 123, and 124 ) in this case. The motions were all filed before the full submission of all responses to DELA TORRE's complaint. The motions serve no legitimate legal or procedural purpose. Each motion was drafted with the assistance of ChatGPT.

99. As of the date of this Answer and Counterclaim, DELA TORRE has filed 12 requests for judicial notice (ECF Docket Numbers: 47, 107, 108, 111, 112, 113, 125, 126, 127, 131, 132 and 134), independent of any motion. The requests were made for judicial notice of facts which were obviously subject to reasonable dispute, facts specific to the dispute in the litigation, facts not know to the average person, and facts only known through evidence in the case. Each request for judicial notice was drafted with the assistance of ChatGPT.

c. *DELA TORRE's Use of ChatGPT*

100.    Throughout both the previous lawsuit - *Dela Torre v. Nippon Life Insurance Company of America*, 1-22-cv-07059 - and the current lawsuit, DELA TORRE has used ChatGPT to draft motions, notices, subpoenas, and requests for judicial notice. PLAINTIFF has also used ChatGPT to conduct legal research and provide legal analysis and advice.

101.    On April 29, 2025, DELA TORRE filed a request for judicial notice "regarding arbitration clause and unauthorized third-party involvement" docketed as ECF number 47 in the present lawsuit. DELA TORRE's judicial notice is included below:



Case: 1:25-cv-01483 Document #: 47 Filed: 04/29/25 Page 1 of 4 PageID #:306

FILED
4/29/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
CVK

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS

Graciela Dela Torre,
Plaintiff,

v.

Davies Life and Health, Inc., et al.,
Defendants.

Case No. 1:25-cv-01483
Judge Edmond E. Chang_____(mw)

**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE REGARDING ARBITRATION CLAUSE AND UNAUTHORIZED THIRD-PARTY INVOLVEMENT**

NOW COMES Plaintiff, Graciela Dela Torre ("Plaintiff"), appearing pro se, and respectfully submits this request for judicial notice related to the Settlement Agreement filed as Exhibit C (Dkt. 44-3), disclosure of Plaintiff's protected health information (PHI), and third-party involvement in the administration of her ERISA-governed disability benefits:

**I. Arbitration Clause**

1.  Section 3.6 of the Settlement Agreement (Dkt. 44-3) introduces a mandatory arbitration clause, stating that any controversy or claim arising out of or relating to the agreement shall be resolved by binding arbitration administered by the American Arbitration Association.

2.  Under ERISA, settlement agreements that impact statutory rights must be reviewed and approved by the court before enforcement, particularly when they include private arbitration clauses. See *Carr v. Gateway, Inc.*, 944 F. Supp. 2d 602, 609 (D.S.C. 2013). In *Carr*, the court refused to compel arbitration in an ERISA long-term disability dispute due to the lack of express court review and protection of statutory rights, affirming that judicial scrutiny is required for such settlements.

3.  In *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 709 (7th Cir. 1994), the Seventh Circuit emphasized that while arbitration is favored generally, statutory rights like those under ERISA may not be waived through private agreement unless consistent with congressional intent. The court affirmed that arbitration clauses cannot be used to defeat federally protected rights.

4.  In this case, the dismissal order did not explicitly incorporate or approve the arbitration provision. Therefore, enforcement of Section 3.6 violates ERISA principles.

5. Judicial notice is requested to confirm that the arbitration provision in Section 3.6 is unenforceable unless the court expressly approved it in the judgment.

## II. HIPAA Authorization Discrepancy

6. Plaintiff signed a HIPAA Authorization on April 20, 2023 (Dkt. 44-6), directed to Nippon Life Insurance Company of America. However, the document includes branding from "Nippon Life Benefits," a separate legal entity.

7. Plaintiff never consented to release PHI to "Nippon Life Benefits" or downstream vendors. Any transfer of PHI beyond the named entity exceeds the scope of the authorization and may violate HIPAA.

8. Judicial notice is requested of this discrepancy as it implicates the integrity of medical evidence, chain of custody, and legal compliance in this ERISA case.

## III. Unauthorized Third-Party Involvement

9. Plaintiff submits into the record a letter dated April 22, 2020 (Dkt. 44-8), from Custom Disability Solutions (CDS), referencing Allsup, Inc., and encouraging Plaintiff to authorize Allsup to act as her SSA representative, stating Allsup "will begin acting on your behalf."

10. Plaintiff never signed SSA Form 1696 or authorized Allsup to act on her behalf. Allsup's access to SSA records and their role in her claim were unauthorized.

11. The letter confirms coordination among Nippon Life, CDS, and Allsup without Plaintiff's informed consent. This constitutes a breach of fiduciary duty under ERISA and raises serious HIPAA compliance concerns.

12. Judicial notice is warranted as this activity affects the validity of LTD offsets and the underlying administration of Plaintiff's claim.

## IV. Davies Life & Health's Fiduciary Breach and Use of Allsup

13. A letter from DMS (now Davies Life & Health) signed by Claim Consultant Jennifer Johnson (Dkt. 44-9) confirms Allsup as "our vendor." DMS offered Allsup's services while Plaintiff's LTD benefits were active, coercing her toward SSDI representation.

14. This demonstrates DMS was not neutral but facilitated Allsup's access and control over Plaintiff's SSA interactions.

15. Plaintiff did not consent to this arrangement. As the delegated claims administrator, DMS owed a fiduciary duty to act loyally, prudently, and transparently. Instead, DMS exploited its administrative role for strategic offsets against LTD benefits.

16. Judicial notice is requested that Allsup's involvement under the direction of DMS/Davies was not voluntary, and materially prejudiced Plaintiff's rights under ERISA.

### V. DMS's Corporate Alias Strategy

17. DMS has used multiple fictitious business names, including "New England Claims Administration Services" and "Centre Claims Administration Services," across different states, as shown in the footer of Dkt. 44-10.

18. This fragmented identity structure raises material concerns about accountability, transparency, and the integrity of claim-related disclosures and services.

19. Judicial notice of this practice is important to ensure clarity regarding DMS's legal obligations and entity continuity.

### VI. Conclusion

WHEREFORE, Plaintiff respectfully requests that the Court take judicial notice of:

- (a) The unenforceability of the arbitration clause in the absence of express judicial approval (Dkt. 44-3);

- (b) The HIPAA authorization discrepancy involving "Nippon Life Benefits" as an unapproved recipient (Dkt. 44-6);

- (c) The unauthorized involvement of Allsup, Inc. via CDS and Davies Life & Health (Dkt. 44-8);

- (d) The vendor relationship between DMS and Allsup, which violated Plaintiff's ERISA rights (Dkt. 44-9);

- (e) The use of multiple DBAs by DMS/Davies to obscure their role in the LTD claims process (Dkt. 44-10).

Respectfully submitted,

Dated: April 29, 2025
/s/ Graciela Dela Torre
Graciela Dela Torre
Pro Se Plaintiff
653 Wing Street, Elgin, IL 60123
gmestiza1@gmail.com
(630) 670-5914

102.     DELA TORRE's April 29, 2025 request for judicial notice matches and copies the formatting of the legal documents produced by ChatGPT. The phrasing, tone, and rhythmic structure of DELA TORRE's request bear a striking resemblance to those typically produced by ChatGPT, reflecting a near-identical use of language, tenor, and cadence.

103.     The ChatGPT formatting, phrasing, tone, and rhythmic structure appears consistently throughout all of DELA TORRE's *pro se* filings in both the previous lawsuit against NIPPON and her current lawsuit.

104.     DELA TORRE's April 29, 2025, request also includes a citation to *Carr v. Gateway, Inc.*, 944 F.Supp.2d 602, 609 (D.S.C. 2013), which DELA TORRE claims that the district Court refused to compel arbitration in an ERISA dispute "due to the lack of express court review." However, there is no case with that case title and citation. A search of the Federal Supplement, 2nd Series citation produces *Barrows v. City of Chattanooga, Tenn.*, 944 F.Supp.2d 596 (E.D.Tenn. 2018), a case regarding unpaid overtime wages under the federal Fair Labor Standards Act. *Id.* Likewise, a search for the pinpoint page of 944 F.Supp.2d 609 produces *Reed v. Poctor and Gamble Mfg. Co.*, 944 F.Supp.2d 607 (W.D.Tenn 2013) which ruled on a Title VII mixed motive discrimination claim for failure to promote an employee. Neither ERISA nor arbitration clauses are discussed in either of the cases.

105.     By comparison, when asked if it was familiar with the case *Carr v. Gateway, Inc.*, ChatGPT responded that it was and provided a summary of the case. It produced the same reporter citation, F.Supp.2d 602, as DELA TORRE's citation. It identified the same year, 2013, for the decision as DELA TORRE. And, it made the same claim – that the Court addressed the enforceability of an arbitration clause – as DELA TORRE when she cited to *Carr v. Gateway, Inc.* in her papers. A screenshot of the ChatGPT conversation is imbedded herein:

✎         Skip to content         Log in

are you familiar with the Carr v. Gateway 944 F.Supp.2d 602?

Yes, I'm familiar with **Carr v. Gateway, Inc., 944 F. Supp. 2d 602 (S.D. Ill. 2013)**—a federal district court decision addressing the enforceability of an arbitration clause included post-sale by Gateway with its PC. Here's a thorough overview:

---

### 📄 Case Summary

#### ✦ Background

- After purchasing a Gateway computer, William Carr received a "Limited Warranty Terms and Conditions Agreement" that included an arbitration clause specifying the National Arbitration Forum (NAF). Gateway sought to compel arbitration; Carr opposed, arguing the clause was never part of the original contract and, even if it had been, was unconscionable. <sub>Justia Law +8</sub>

#### 🏛 District Court Decision (S.D. Ill.)

- The court held:

  1. The arbitration clause was **not part of the sales contract**, as Carr didn't receive or review it until after purchase. <sub>Justia Dockets & Filings</sub> <sub>Justia Law +1</sub>

  2. Even if it were, the clause was **procedurally and substantively unconscionable**, highlighting its non-negotiable form, hidden terms, one-sidedness, burdensome costs, prohibition on class actions/punitive damages, and requirement to use NAF. <sub>Justia Law +4</sub>

- Gateway appealed, but before appellate resolution, it was revealed NAF had ceased accepting consumer cases.

#### ✦ Appellate/In-State Courts' Precedents

- The Illinois appellate court (395 Ill. App. 3d 1079) and Illinois Supreme Court (241 Ill. 2d 15) both reinforced that the arbitration clause was invalid—First, because it wasn't part of the contract, and second, because the NAF designation was "integral," meaning FAA § 5 couldn't cure the absence of an alternative arbitral forum. <sub>Casetext +8</sub> <sub>Studicata +3</sub>

---

### ⚖️ Legal Analysis

| Issue | Analysis |
| --- | --- |
| ☑ Contract Formation | A term mailed post-sale does **not become part of the contract** unless there was clear assent from the buyer. |
| ☑ Unconscionability | The clause was procedurally unfair (hidden, surprise) and substantively unfair (one-sided, costly, barred class/punitive claims). |
| ☑ FAA § 5 & Forum Choice | Because NAF was integral, its closure killed the arbitration clause, as courts cannot substitute arbitral forums under FAA § 5 in such cases. |

↓

Ask anything

◎ Attach    ⊕ Search         ፵ Voice

ChatGPT can make mistakes. Check important info.

106. *Carr v. Gateway, Inc.* 944 F.Supp.2d 602 (D.S.C. 2013) refers to a case and a decision that never happened. It only exists in DELA TORRE's papers and the "mind" of ChatGPT.

107. On July 15, 2025, DELA TORRE filed two requests for judicial notice as ECF docket numbers 111 and 112 in the present lawsuit:

Case: 1:25-cv-01483 Document #: 111 Filed: 07/15/25 Page 1 of 2 PageID #:724

BC

FILED
7/15/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MAN

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS

Graciela Dela Torre,
Plaintiff,

v.

Davies Life and Health, Inc., et al.,
Defendants.

Case No. 1:25-cv-01483

---

**PLAINTIFF'S JUDICIAL NOTICE REGARDING PAGES 1–3 OF DKT. 109-1**

**With request for forwarding to the Executive Committee for oversight review**

Plaintiff Graciela Dela Torre respectfully submits this Judicial Notice regarding the improper inclusion of pages 1 through 3 in Dkt. 109-1, which contain email communications dated **February 11, 2025 — one day prior** to the filing of this action on **February 12, 2025** (see Dkt. 1).

These pages contain correspondence from a totally unrelated legal matter that was not part of any motion, pleading, or communication filed in the docket at the time of or after case initiation. Their inclusion in Dkt. 109-1 risks misleading the Court by falsely implying procedural relevance and should be struck from the record entirely.

---

📄 **IDENTIFICATION OF EXTRANEOUS MATERIAL (PAGES 1–3, DKT. 109-1)**

| Page | Sender → Recipient | Date | Summary of Content | Reason These Pages Are Inapplicable to 1:25-cv-01483 |
|---|---|---|---|---|
| 1 | Christina Presslak → Plaintiff | Feb 11, 2025 | Advises not to send court documents by email | Part of a wholly unrelated case; not connected to any filing, motion, or event in this matter. |
| 2–3 | Plaintiff → Proposed_Order_Pallmeyer, Christina Presslak | Feb 11, 2025 | Forwards unrelated communication | Belongs to a different case entirely; its inclusion misrepresents procedural history in this action. |

---

**BASIS FOR THIS NOTICE**

- Case No. 1:25-cv-01483 was formally applied to be filed on **February 12, 2025**, per Dkt. 1.

- Any correspondence dated **February 11, 2025**, occurred prior to the formal initiation of this case.

- These communications were not filed as part of any motion or court-authorized exchange and should not be treated as part of the procedural history of **this case**.

---

**REQUEST FOR NOTICE AND CORRECTIVE ACTION**

Plaintiff respectfully requests that the Court:

1. **Acknowledge** that pages 1–3 of Dkt. 109-1 originate from a separate matter predating this case and should not be considered part of the record in Case No. 1:25-cv-01483;

2. **Strike these pages from the record** strike/remove these pages from the record in its entirety, and recognize that their presence in the record constitutes a significant clerical and judicial oversight that materially compromised the integrity of the case record;

3. **Strike from the record** any implication that these emails reflect official procedural history or post-filing context, and in the interest of fairness, enter corrective findings that preserve Plaintiff's right to a procedurally sound record, uninfluenced by unrelated pre-filing communications submitted by opposing counsel that originated from a different legal matter altogether.

Respectfully submitted,
/s/ Graciela Dela Torre
Pro Se Plaintiff
653 Wing Street, Elgin, IL 60123
gmestiza1@gmail.com
(630) 670-5914

CERTIFICATE OF SERVICE I certify that on July 15, 2025, I served a true and correct copy of this Notice all registered parties via the Court's CM/ECF system.

/s/ Graciela Dela Torre

Graciela Dela Torre



**FILED**
7/15/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MAN

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

**Graciela Dela Torre,**
Plaintiff,

v.

**Case No. 1:25-cv-01483**

**Nippon Life Insurance Company of America, et al.,**
Defendants.

---

**PLAINTIFF'S JUDICIAL NOTICE REGARDING PAGES 4–16 OF DKT. 109-1**

**With Request for Forwarding to the Executive Committee under Local Rule 40.3(d)**

Plaintiff Graciela Dela Torre respectfully submits this Supplemental Judicial Notice addressing pages **4 through 16 of Dkt. 109-1**, which contain a series of **misleading communications** by defense counsel, including **Joseph R. Jeffery** of Chittenden, Murday & Novotny LLC and **Robert W. Brunner** of Bryan Cave Leighton Paisner LLP, that caused substantial prejudice to Plaintiff and resulted in procedural irregularities and omissions, as evidenced by Dkt. 65 and Dkt. 109.

This filing supplements the **Judicial Notice filed on July 15, 2025,** which addressed pages 1–3 of Dkt. 109-1 and demonstrated that those emails were erroneously included from an unrelated matter. Here, Plaintiff analyzes the remaining communications to demonstrate a broader pattern of misrepresentation and court misguidance.

---

📖 **EMBEDDED TABLE OF CONTENTS: PAGES 4–16 OF DKT. 109-1**

| Page(s) | Sender → Recipient(s) | Date | Subject / Action | Procedural and Strategic Impact |
|---------|----------------------|------|------------------|--------------------------------|
| 4–5 | Joseph R. Jeffery → Susan Lenburg (cc: parties) | Jun 3, 2025 @ 4:21 PM | Mischaracterizes Dkt. 58 as Second Amended Complaint | Violates **Local Rule 37.2** by imposing a 1.5/2-hour reply window; creates illusion of conferral and causes improper docketing and confusion. |

| 6 | Plaintiff → Jeffery | Jun 3, 2025 | "You emailed the wrong judge." | Demonstrates Plaintiff immediately attempted to correct procedural errors. |
| 7 | Jeffery → Plaintiff | Jun 3, 2025 | "It went to courtroom deputy." | Fails to acknowledge misleading effect of his email. |
| 8 | Plaintiff → Susan Lenburg | Jun 4, 2025 | Clarifies Dkt. 53 is SAC; Dkt. 58 is supplemental | Plaintiff complies with **FRCP 15(d)** and makes timely correction; ignored by the Court. |
| 9–10 | Susan → Plaintiff | Jun 4–5, 2025 | "No ex parte communication" notice | Applied selectively; Susan responded to defense but discouraged Plaintiff from clarification. |
| 11–12 | Plaintiff → Christina Presslak | Jun 5, 2025 | Attempts further clarification | Plaintiff's neutral efforts to explain confusion were suppressed. |
| 13–14 | Robert Brunner → Court | Jun 6, 2025 | Refers to "Third Amended Complaint" | Further mischaracterization snowballs into judicial error. |
| 15–16 | Plaintiff → Court | Jun 5–6, 2025 | Reasserts 53 as SAC and corrects record | Completely disregarded in Dkt. 65; a due process violation. |

### 🔍 LEGAL BASIS FOR JUDICIAL NOTICE AND REQUESTED REMEDY

Plaintiff invokes the following authorities in support:

- **FRCP 11(b)(3):** Representations to the Court must be factually accurate. Mr. Jeffery's email at 4:21 PM on June 3 falsely labeled Dkt. 58 as Plaintiff's Second Amended Complaint. This misrepresentation initiated a chain reaction of procedural errors.

- **Local Rule 37.2:** Requires meaningful, timely conferral between parties before seeking relief. Jeffery's artificial deadline (4:00 PM) gave Plaintiff less than two hours

to respond and was sent after that window, rendering the "conferral" illusory and noncompliant.

- **FRCP 15(d):** Plaintiff's intent to file a supplemental complaint was proper and clearly labeled as such. The Court was not afforded a fair opportunity to evaluate the filing due to defense misrepresentation.

- **Fifth and Fourteenth Amendments – Due Process:** Plaintiff was procedurally disadvantaged as a pro se litigant through reliance on staff communications influenced by defense counsel's inaccurate filings.

- **Local Rule 40.3(d):** A pattern of prejudicial and unevenly enforced communications (i.e., court staff acting upon defense counsel emails but discouraging pro se clarification) justifies Executive Committee oversight.

---

## 🏅 KEY FINDINGS

1. **Defense counsel Joseph R. Jeffery of Chittenden, Murday & Novotny LLC misrepresented operative filings** (Dkt. 58 mislabeled as SAC) to court staff.

2. **Plaintiff's actual Second Amended Complaint (Dkt. 53) was disregarded due to procedural mischaracterizations introduced by Joseph R. Jeffery, counsel for Davies Life & Health, Inc.,** leading to improper assumptions in Dkt. 65 and Dkt. 109.

3. **Conferral was staged;** email was sent at 4:21 PM by Joseph R. Jeffery of Chittenden, Murday & Novotny LLC (counsel for Davies Life & Health, Inc.) with a 4:00 PM response deadline, violating Local Rule 37.2 and creating an illusion of conferral that prejudiced the Plaintiff.

4. **Courtroom Deputy Susan Lenburg enforced email etiquette selectively,** responding to defense counsel Joseph R. Jeffery of Chittenden, Murday & Novotny LLC while discouraging Plaintiff Graciela Dela Torre's clarification efforts, thereby giving the defense procedural advantage and creating the appearance of ex parte endorsement.

5. **Subsequent judicial actions (Dkt. 65, 109) relied on these false impressions, including pages 1–3 of Dkt. 109-1, which were erroneously lifted from an unrelated legal proceeding and have no connection to this case. Their inclusion is highly prejudicial and misled the Court into applying irrelevant context. Dkt. 65, specifically, irreversibly harmed Plaintiff by relying on these errors to strike**

**Dkt. 53 and 58 from the record, which were in fact the operative Second Amended Complaint and a valid Supplemental Complaint under FRCP 15(d). As a direct result, Plaintiff's allegations of post-settlement misconduct, HIPAA violations, and ERISA fiduciary breaches were never reviewed on the merits. This denied Plaintiff access to meaningful judicial remedies, impaired her ability to pursue relief under controlling statutes, and altered the trajectory of the litigation. The Court's reliance on mischaracterized filings and staff-influenced confusion—without correction—constitutes structural prejudice and undermines fundamental due process protections.**, thereby denying Plaintiff a fair and impartial review.

6. The misleading sequence of communications provoked a cascade of reactive filings by Plaintiff, who was forced to clarify, correct, and defend her submissions multiple times often against confusion directly caused by defense mischaracterizations and selectively enforced staff responses. Rather than allowing the Court to act upon the merits of Plaintiff's claims, these distortions reversed the burden: Plaintiff was made to fight procedural obstacles and judicial misperceptions, draining limited resources and placing an unfair litigation burden on a disabled pro se litigant. This misdirection served only to obscure the serious statutory and constitutional violations at issue, burdening both Plaintiff and the Court, while reinforcing the structural prejudice already embedded by Dkt. 65 and its reliance on flawed impressions.

---

### 📄 REQUEST FOR NOTICE AND CORRECTIVE ACTION

Plaintiff respectfully requests that the Court:

1. **Acknowledge that pages 4–16 of Dkt. 109-1 contain materially misleading communications authored primarily by Joseph R. Jeffery (counsel for Davies Life & Health, Inc.) and Robert W. Brunner (counsel for Allsup, LLC), which mischaracterized the procedural posture of Plaintiff's filings and created the illusion of compliance with conferral obligations. These communications provoked confusion and resulted in judicial rulings adverse to Plaintiff. Their presence in the record imposed unnecessary burdens on both the Court and Plaintiff, by triggering a cascade of clarification filings and docket corrections that would not have been necessary had the record been accurately presented in good faith.**, which led to prejudice in the record;

108.     DELA TORRE's filings in ECF Dockets 111 and 112 not only mirror the formatting, language, tenor, and cadence of ChatGPT generated content, but they also feature similar illustrative "thumbtack" icons in the headers of various sections. Notably, both DELA TORRE's filings and ChatGPT's outputs display the same "scales of justice" symbol. This symbol appears as a thumbtack next to the "Key Findings" section in DELA TORRE's ECF Docket 112, and similarly appears in ChatGPT's responses to prompts concerning *Carr v. Gateway* – specifically next to the "Legal Analysis" heading, as shown in ¶ 104 of this Counterclaim – and in the "Serve all Parties" section described in ¶ 83. The placement of the scale of justice thumbtacks are the same in DELA TORRE's filings and the ChatGPT outputs. As such, the language in DELA TORRE's filings are copied, and apparently pasted, from ChatGPT outputs.

109.     DELA TORRE has demonstrated a consistent use of ChatGPT throughout both the previous and current lawsuit to provide her with legal advice, legal research and legal papers prepared for the purpose of filing with the Court.

d.  *Ulterior Motive for Filings*

110.     DELA TORRE's filings reflect a deep and escalating anger toward NIPPON, which permeates her legal arguments and procedural behavior. She frequently describes herself as a "disabled pro se litigant" (see, e.g., Dkts. 38, 40, 57, 58, 69, 78, 80, 83, 115, 116, 124, 127, 131) and claims to suffer from neurological and cognitive impairments (see, e.g., Dkts. 40, 45, 46, 63, 78, 80, 104, 117, 127, 131). These repeated assertions, unsupported by any formal disability determination and unrelated to the specific legal relief she seeks, appear intended less to establish legal facts than to build a narrative of personal grievance. Within that narrative, NIPPON is positioned as the antagonist responsible for her suffering – financially, physically, and emotionally.

111.     Her filings go beyond ordinary litigation and reveal a tone of resentment and personal

hostility. She has openly expressed regret over entering into the parties' settlement Agreement and has portrayed that decision as one she made under duress. See *Dela Torre v. Nippon Life Insurance Company of America*, 1:22-cv-07059, Dkt. 94 (N.D. Ill. 2025). Despite the Court's clear holding that the Agreement is valid and enforceable, and her own acknowledgement that the Agreement is enforceable, DELA TORRE has persistently attempted to reopen or undermine it, both in the prior action and in this one. Her ongoing attempts to circumvent the finality of that resolution reflect not a legal misunderstanding, but a refusal to let go of her anger toward NIPPON – an anger that now fuels her litigation strategy.

112.     DELA TORRE's conduct throughout both lawsuits reveals a state of mind driven by sustained animosity rather than any objective legal purpose. She has consistently portrayed herself as impoverished, accused NIPPON of financially starving her, and repeatedly blaming NIPPON for her financial hardship. See *Dela Torre v. Nippon Life Insurance Company of America*, 1:22-cv-07059, Dkts. 75; Dkt 57. These claims of "financial starvation" are closely intertwined with her self-described disability, further reinforcing her portrayal of victimhood. However, rather than using litigation to seek proper judicial relief, DELA TORRE views the legal process as a means to express her anger, punish NIPPON, and reassert control over a situation she believes caused her personal suffering.

113.     DELA TORRE's state of mind is one of sustained animosity, not objective legal purpose. Her actions indicate that she views this litigation as a vehicle to express and act on her anger toward NIPPON. Rather than accepting the outcome of the prior litigation or pursuing legitimate claims within legal bounds, she has used the judicial process to reassert control, exact revenge, and attempt to inflict reputational and operational harm on NIPPON. Her procedural conduct – including meritless motions, repetitive allegations, and inflammatory characterizations – exemplifies an emotional agenda that far exceeds the scope of any legitimate dispute. This

emotional agenda is rooted in resentment and frustration, and it reflects an ulterior motive: not to obtain lawful relief, but to retaliate as a form of revenge.

114.     This misuse of the legal system has escalated into targeted harassment. DELA TORRE has filed motions lacking legal or factual basis, demanded judicial notice of irrelevant and disputed allegations, and repeatedly inserted accusations into the record that serve only to vilify NIPPON. These actions are not efforts to advance a legal claim; they are attempts to weaponize the court process in service of her personal anger and retributive retaliation. DELA TORRE's filings are calculated to force NIPPON to expend resources, harass the company, and suffer reputational damage.

e.  *Improper Acts*

115.     DELA TORRE's misuse of legal process began in her previous lawsuit against NIPPON, *Dela Torre v. Nippon Life Insurance Company of America*, 1-22-cv-07059.

116.     On February 3, 2025, she issued a subpoena duces tecum to NIPPON, demanding production within five days of extensive materials including: a) identities of surveillance personnel, b) financial records for surveillance, c) surveillance reports, d) internal justifications, and e) legal communications regarding surveillance. *Id.* Dkt. 57. This subpoena was facially improper: the case had been dismissed with prejudice nearly a year earlier; discovery had closed by stipulation on February 1, 2024; and the demanded materials, including privileged legal communications, were irrelevant. Nonetheless, on February 10, 2025, she filed a motion for judicial notice of the subpoena and asked the Court to recognize its "relevance." *Id.* at Dkt. 77.

117.     DELA TORRE had no legitimate purpose in issuing this subpoena. The request for production within five days further demonstrates her intent to burden and harass NIPPON, not to obtain valid discovery.

118.     On February 7, 2025, DELA TORRE filed a motion seeking to add NIPPON's Chief

Strategy & Operations Officer as a "named representative in the case" with the stated intent of subjecting him to deposition. *Id.* at Dkt. 67. This motion was procedurally and substantively improper since: a) the case had been dismissed with prejudice; b) the motion was filed while the case remained dismissed and her motion to reopen was still pending; c) discovery had closed by stipulation on February 1, 2024; and d) the proposed testimony bore no relevance to any issue before the Court. Moreover, DELA TORRE knew the officer in question was not involved in the underlying claims and held no unique knowledge relevant to her motion to reopen.

119.     The motion served no legitimate legal purpose. Naming a high ranking corporate officer within the legal confines of the protective corporate veil, in the midst of a dismissed case, and attempting to compel his deposition absent any procedural standing or discovery rights, demonstrates a misuse of legal process designed to create pressure, embarrassment, and undue burden on NIPPON. Instead, the filing reflects a clear intent to harass and intimidate a senior corporate executive of NIPPON.

120.     On February 3, 2025, DELA TORRE submitted a motion "to introduce evidence of false advertising and deceptive business practices." *Id.* at Dkt. 53. In the motion DELA TORRE sought judicial declaration that NIPPON had contradicted its promotional materials and permit discovery into NIPPON's marketing practices. Again, this motion was procedurally and substantively improper since: a) the case had been dismissed with prejudice; b) the motion was filed while the case remained dismissed and her motion to reopen was still pending; c) discovery had closed by stipulation on February 1, 2024; d) and DELA TORRE's accusations had no bearing on the pending motion to reopen. Moreover, all claims of false advertisement or deceptive business practices were outside the scope of the Complaint – alleging a single cause of action for the violation of ERISA due to the termination of DELA TORRE's LTD policy. Additionally, DELA TORRE's motions and allegations were devoid of evidentiary support and relied on DELA

38

TORRE's personal opinion and conjecture.

121.     Once again, DELA TORRE's motion served no legitimate legal purpose. She knew or
reasonably should have known that the motion lacked procedural viability. Its only apparent
objective was to malign NIPPON, improperly influence the Court's perception, and prejudice the
Court's consideration of her pending motion to reopen.

122.     DELA TORRE's improper acts continued into the present lawsuit.

123.     After the Court denied DELA TORRE's motion to reopen her prior lawsuit against
NIPPON, and following the Court's subsequent warning that the current action could be
dismissed for lack of subject matter jurisdiction, DELA TORRE amended her Complaint on
March 10, 2025. In doing so, she named NIPPON as a Defendant and asserted new causes of
action related to her LTD policy – claims that had already been released under the terms of a
binding settlement Agreement. DELA TORRE took this step despite having knowingly signed
the Agreement, which expressly released NIPPON from liability for those very claims, and
despite the Court's prior determination that the Agreement was final, valid, and enforceable.

124.     Naming NIPPON as a Defendant in the current lawsuit – after having released all claims
through a valid and enforceable settlement agreement – constitutes a clear improper act. DELA
TORRE's addition of NIPPON was not grounded in any legitimate legal basis but was instead a
deliberate tactic to manufacture subject matter jurisdiction and circumvent the Court's prior
ruling denying her motion to reopen the earlier case. This improper act served no purpose other
than to prolong litigation, harass NIPPON, and burden the judicial system with claims barred by
the settlement.

125.     On April 11, 2025, DELA TORRE filed a request for judicial notice seeking to introduce
prior regulatory "sanctions" allegedly issued against NIPPON. See Dkt. 37. The request
identified four purported "facts": 1) that a New York State Department of Financial Services

(DFS) consent order found NIPPON had inadequate oversight, internal control failures, and mismanagement of client data; 2) that NIPPON failed to promptly notify affected individuals of a data breach involving EyeMed, thereby exposing them to prolonged risk; 3) that the Japanese Fair Trade Commission issued a 2003 cease and desist order for deceptive marketing of cancer policies; and 4) that the Japanese Financial Services Agency found in 2008 that NIPPON had systematically failed to pay benefits across one million policies.

126.     The request was procedurally and substantively improper. DELA TORRE failed to meet the threshold requirement for judicial notice under Federal Rule of Evidence 201, offering no support that these "facts" were either undisputed or generally known within this judicial district – a dubious proposition, given their specificity, foreign origin, and lack of any connection to Illinois. Beyond being unsupported, the "facts" are demonstrably false. The DFS consent order did not find that NIPPON had inadequate oversight, internal control failures, or mismanaged data. NIPPON was never accused of delaying breach notifications related to the EyeMed data breach. Neither has NIPPON been accused of deceptive marketing for cancer policies or found to have failed to systemically pay benefits across one million policies. As an American based company, NIPPON is not subject to Japanese regulatory authority and has never been sanctioned by the Japanese Fair Trade Commission or Financial Services Agency. Although NIPPON's foreign parent may have been subject to regulatory actions abroad, those actions do not apply to NIPPON and were grossly misrepresented in DELA TORRE's filing as Nippon Life Insurance Company was never found to have systemically failed to pay benefits to "one million" policies. These "facts" are false and defamatory.

127.     DELA TORRE's motion lacked any legal basis, evidentiary foundation, or relevance to the underlying litigation. Her failure to even attempt to satisfy the standards for judicial notice – coupled with the inflammatory and demonstrably false nature of the allegations – shows that the

request had no legitimate purpose. Rather, it was an improper act aimed at publicly defaming NIPPON, damaging its reputation, and injecting prejudice into the record.

128.     Beyond publicly disseminating defamatory statements through court filings, DELA TORRE has exploited those filings to mislead third parties – specifically, the American Arbitration Association (AAA) – into believing those falsehoods are judicially established facts. In a July 22, 2025 email to the AAA's International Centre for Dispute Resolution (ICDR) representative, in which she objected to NIPPON's initiation of arbitration proceedings, DELA TORRE accused NIPPON of engaging in "procedural fraud and bad faith" and urged the AAA to halt the arbitration's progression. As purported support, she falsely claimed that the Court had granted her request for judicial notice of prior regulatory sanctions against NIPPON, referencing Dkt. 37. In reality, the Court had expressly declined to grant that motion. See Dkt. 39. Nevertheless, DELA TORRE misrepresented the Court's inaction as confirmation that "arbitration misconduct is now part of the judicial record."

129.     DELA TORRE's mischaracterization of the judicial record was not an error. It was intentional. Despite knowing that the Court had not taken judicial notice of the allegations in her motion, she deliberately portrayed them to the AAA as undisputed fact endorsed by the Court, thereby creating the false impression that her unverified claims had legal weight. This was a calculated effort to improperly leverage the federal docket to influence the outcome of a parallel proceeding. In doing so, DELA TORRE sought to weaponize her own unsupported allegations as a tool of reputational and procedural harm. Her conduct represents a clear abuse of legal process: using court filings not to secure judicial relief, but to manufacture false credibility for defamatory accusations and to gain an unfair advantage in a separate arbitration forum. In essence, DELA TORRE weaponized the Court's docket as a platform for the publication of defamatory statements behind the protective curtain of litigation privilege.

130.    In addition to attacking NIPPON as a corporation, DELA TORRE has also retaliated against NIPPON by harassing NIPPON's legal counsel, Justin Wax Jacobs.

131.    On July 7, 2025, NIPPON filed a motion for an extension of time to respond to DELA TORRE's pleadings. The extension was needed because their legal counsel, Justin Wax Jacobs, was involved in an accident and had suffered injuries. The Court granted the motion on July 8, 2025. Dkt 91. In response, DELA TORRE filed a motion on July 8, 2025 asking the Court to compel Mr. Wax Jacobs to "provide verified proof of counsel's claimed medical incapacity." Dkt. 95. DELA TORRE compared the injuries to her own purported ailments of "[p]ermanent, irreversible [n]erve and [t]endon [d]amage, [f]ibromyalgia, [c]hronic [p]ain and [m]igraines (emphasis removed)" and complained that the Court had not accorded her physical limitations with the same attention and respect. *Id.* DELA TORRE also accused Mr. Wax Jacobs of violating FRCP Rule 11's requirement for factual assertions to have evidentiary support. *Id.*

132.    DELA TORRE sought to pursue Mr. Wax Jacobs' medical records despite the Court's general policy not to demand medical records for short extensions of time. DELA TORRE sought to pursue Mr. Wax Jacobs' medical records despite knowing that he was suffering from injuries. And, Ms. DELA TORRE sought to pursue Mr. Wax Jacobs' medical records even after the Court had already ruled in favor of the motion. Because the motion was filed after the Court's ruling, it served no legitimate purpose. Without a legitimate purpose, DELA TORRE's intent in filing the motion was to harass an injured party in retaliation for what she believed was special treatment from the Court.

133.    DELA TORRE's motion served no legitimate legal purpose. It was filed after the Court had already ruled on the matter, rendering her objection moot. Moreover, the Court does not require supporting medical documentation for routine extensions due to temporary health issues. Her demand for Mr. Wax Jacobs' private medical records, under these circumstances, was wholly

improper. The filing was retaliatory in nature: a vindictive response to a perceived disparity in judicial treatment. Rather than advancing a valid legal claim or protecting any procedural right, DELA TORRE used the motion as a vehicle to harass an injured attorney, call into question his credibility without basis, and further inject personal grievance into the record.

134.     DELA TORRE escalated her campaign of personal harassment against NIPPON's counsel, Justin Wax Jacobs, through a series of meritless and inflammatory filings. On May 21, 2025, she filed a frivolous motion for Rule 11 sanctions. On July 26, 2025, she submitted a request for judicial notice accusing Mr. Wax Jacobs of forgery. Just four days later, on July 30, 2025, she filed an equally baseless motion requesting a Rule 43 evidentiary hearing on her forgery accusations. See Dkts. 57, 134, 137. These filings leveled serious, unsupported allegations that Mr. Wax Jacobs had submitted false declarations and forged documents to the Court. None of the filings contained any credible or relevant evidentiary support. Additionally, DELA TORRE failed to adhere to safe harbor provision of Rule 11 by providing Justin Wax Jacobs with notice 21 days prior to submitting her motion for sanctions to the Court.

135.     The accusations and conduct stem from DELA TORRE's ongoing attempt to discredit a well-documented and indisputable event: the mailing and delivery of NIPPON's demand for arbitration on January 29, 2025, which she received at her home on January 30. This fact has been conclusively established by postal tracking records, documentary proof, photographic evidence, and even DELA TORRE's own prior submissions. Rather than acknowledge the overwhelming evidence contradicting her position, DELA TORRE has chosen to vilify and attack opposing counsel in an attempt to rehabilitate her own disproven narrative, a continued misuse of legal procedure to carry out a personal vendetta—conduct that is not only improper but also indicative of an ulterior motive to retaliate, obstruct, and harass rather than to seek any legitimate judicial relief.

136.     The judicial record of both DELA TORRE's prior lawsuit and the present lawsuit,

includes additional examples of abuse of process.

137.     As a lay person with no legal experience who purportedly suffers from physical ailments

to her hands and elbows, DELA TORRE would not have been able to prosecute her misconduct

and file at the same volume and frequency but for the legal assistance provided by OPENAI

through its ChatGPT application. DELA TORRE would not have been able to sustain her

campaign of retaliation and harassment against NIPPON but for ChatGPT's ability to prepare and

draft legal papers for submission to the Court.

138.     Due to DELA TORRE's abuse of the judicial system, aided and abetted by OPENAI's

unlicensed practice of law, NIPPON has sustained significant harm and reputational damage.

NIPPON has had to expend substantial resources to defend and enforce a settlement Agreement,

which DELA TORRE even acknowledges as being final and enforceable, and relitigate claims

which had been previously disposed of. Additionally, NIPPON has been forced to expend

significant time and resources responding to the deluge of demonstrably frivolous motions and

requests for judicial notice. The harm has included incurred costs, legal expenses and fees.

**First Counterclaim:**

**Abuse of Process**

139.     NIPPON repeats and realleges paragraphs 59 through [] hereof, as if fully set forth herein.

140.     In Illinois the elements for the tort of abuse of process are: 1) the existence of an ulterior

purpose or motive and; 2) some act in the use of legal process not proper in the regular

prosecution of the proceedings (internal quotations omitted)." *Pace* at 757; citing *Kumar* at 820

N.E.2d 1173.

141.     DELA TORRE submitted frivolous motions and requests for judicial notice, in both her

previous lawsuit against NIPPON and the current lawsuit at bar, with no legitimate or proper

purpose. Instead, her actions were designed to harass and publicly defame NIPPON in retaliation for her perceived victimization and out of retribution for the physical, mental and financial suffering DELA TORRE believed NIPPON had caused her.

142.    Therefore, DELA TORRE is guilty of abusing the judicial process.

143.    OPENAI, through its AI chatbot program ChatGPT, aided and abetted DELA TORRE's abuse of process by providing DELA TORRE with legal advice, legal analysis and legal research, as well as by assisting DELA TORRE in the drafting and preparation of her frivolous motions and requests for judicial notice against NIPPON.

144.    Therefore, OPENAI is guilty as a joint-tortfeasor for DELA TORRE's abuse of the judicial process.

145.    As joint tortfeasors, DELA TORRE and OPENAI are jointly and severally liable to NIPPON for both compensatory and punitive damages.

## **Second Counterclaim:**

## **Unlicensed Practice of Law**

146.    NIPPON repeats and realleges paragraphs 59 through [] hereof, as if fully set forth herein.

147.    In Illinois "[n]o person shall be permitted to practice as an attorney or counselor at law within this State without having previously obtained a license for that purpose from the Supreme Court of this State." 705 ILCS 205/1 § 1. "Any person practicing … or holding himself or herself out to provide legal services within this State, either directly or indirectly, without being licensed to practice as herein required, is guilty of contempt of court…" *Id.*

148.    OPENAI, through its AI chatbot program ChatGPT, provides legal advice, legal analysis, legal research and can draft legal documents and papers for submission to a Court. ChatGPT provides these legal services to any user who requests them.

149.    ChatGPT is not licensed to practice law in Illinois. ChatGPT is not a member of the

Illinois state bar. ChatGPT is not admitted to practice law in any state in the United States. N

150.    ChatGPT assisted DELA TORRE, an Illinois resident, in the preparation and drafting of her various motions and requests for judicial notice which were filed in the United States District Court for the Northern District of Illinois. ChatGPT also provided DELA TORRE with legal analysis, legal research and legal advice as assistance to her two lawsuits in the Northern District of Illinois. Consequently, ChatGPT engaged in the practice of law in the state of Illinois without a license.

151.    Therefore, OPENAI, is guilty of the unlicensed practice of law in the state of Illinois.

**WHEREFORE**, Defendant-counterclaim Plaintiff, NIPPON respectfully requests that the Court enter judgment as follows:

a)  Dismissing PLAINTIFF, DELA TORRE's, claims against NIPPON;

b)  Permanently enjoining Plaintiff-counterclaim Defendant, DELA TORRE, from harassing NIPPON both in and outside the legal system;

c)  Permanently enjoining Plaintiff-counterclaim Defendant, DELA TORRE, from filing any further lawsuits against NIPPON;

d)  Permanently enjoining Counterclaim Defendant, OPENAI, from engaging in the practice of law in the state of Illinois;

e)  Compensatory damages of $150,000;

f)  Punitive damages of $10 million;

g)  Awarding Defendant-counterclaim Plaintiff, NIPPON its reasonable costs and attorney's fees;

h)  Granting any such other and further relief as the Court deems necessary, just and proper.

(Signature on Following Page)

Dated: August 1, 2025

Respectfully submitted,

_____

Justin Wax Jacobs
Attorney *Pro Hac Vice* for the Defendant
Nippon Life Insurance Company of America
666 Third Avenue, Suite 2201
New York, New York, 10017
Tel:     646-630-4923
Fax:     212-867-3057
J-WaxJacobs@nipponlifebenefits.com

## **CERTIFICATE OF SERVICE**

I, Justin Wax Jacobs, hereby certify on August 1, 2025, I caused a true and correct copy of

the foregoing Answer and Counterclaims, to be filed electronically with the Clerk of Court via the

Court's CM/ECF system and thereby served upon all of the named parties or their representatives.

_Justin Jacobs_
_____

Justin Wax Jacobs
Attorney *Pro Hac Vice* for the Defendant
Nippon Life Insurance Company of America