IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GRACIELA DELA TORRE, | )  |
| Plaintiff, | ) |
| v. | ) Case No. 1:25-cv-01483 |
| DAVIES LIFE & HEALTH, INC., formerly known as Disability Management Services, Inc., NIPPON LIFE INSURANCE COMPANY OF AMERICA, and ALLSUP, LLC, | ) Honorable Rebecca R. Pallmeyer |
| Defendants. | ) |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S STATUS REPORT DKT 176

Honorable Judge,
I submit this response to provide the Court with a fuller picture of this case, which at its heart is about my attempt to correct a wrongful benefits denial that was anchored in my policy's own terms.

#### 1. The Core Issue: Newly Discovered Evidence of Policy Violations

After the settlement was signed, I discovered crucial evidence that I could not have found beforehand. This evidence shows clear violations of the policy's own terms and procedures by Nippon and its vendors.
If this information had been known during the previous litigation, it would have fundamentally changed the case's outcome. I did not simply have "second thoughts"; I uncovered proof that the process that led to my denial was flawed from the start. I have provided this evidence to Mr. Wax Jacobs.

#### 2. The Illinois DOI Complaint: Re-Opened for a Reason

My complaint with the Illinois Department of Insurance was initially closed. It was re-opened only after Nippon's counsel submitted a 12-page answer. The DOI would not have re-opened the case if there was no merit to my claims. This official agency action confirms that the issues I am raising require examination.

#### 3. The Abandonment by a Nippon-Sponsored Vendor

My policy entitled me to use their vendor for assistance with my Social Security claim. Nippon's vendor, DMS/Davies inserted Allsup into my case. Yet, when this vendor's involvement became problematic, I was left completely abandoned. Nippon now seeks to hold me responsible for the very vendor relationship they sponsored, and I was entitled to under the policy.

#### 4. The Impossibility of Nippon's Settlement "Offer"

"Nippon's current settlement proposal isn't a path to resolution it's a demand for total surrender. They are asking me to put a $50,000 lien on my home my only asset, and the only

thing keeping me from becoming homeless despite the fact that I after the August 28, 2025 hearing I did inform Opposing Counsel that I already initiated the process of bankruptcy. On top of that, they are demanding access to my private login credentials, not to resolve this matter, but to support their overreaching $10 million counterclaim against OpenAI. That case targets a tool specifically designed to help individuals like me: pro se litigants trying to navigate the legal system without the benefit of legal counsel.

What's more, Nippon's counsel has claimed to be in communication with OpenAI, but despite my repeated, good-faith requests, they have refused to share any of that information with me. I remain completely in the dark being asked to risk everything, while being denied access to basic facts that directly impact my ability to respond or defend myself.

This is not a good-faith offer. It is a pressure tactic designed to overwhelm and break me forcing me to choose between survival and justice. Accepting their terms would not only guarantee financial devastation, but would strip me of the few remaining means I have to protect myself. It would leave me buried under debt, without a home, and without a voice in this legal process.

I am not making "unfeasible demands." I am asking for one thing: a fair and objective review of the evidence showing that the original decision to deny my claim was incorrect under the terms of the Policy. This request is reasonable, and it serves the best interest of all parties involved.

## 5. A Path Forward

I want to resolve this. I have offered to end all litigation if Nippon will simply withdraw its counterclaim and the arbitration it initiated. This would allow us all to move on.

My pending motions are not meant to clutter the court's docket. They are my only tools to ask this Court for help in being heard on the substance of these policy violations, rather than being buried in procedural attacks.

I respectfully ask the Court to consider the human reality of this case: a disabled person, who followed the rules, was wronged by a complex system, and is now simply asking for a fair chance to show the truth.

Respectfully submitted,

/s/ Graciela Dela Torre
Graciela Dela Torre, Pro Se
653 Wing St, Elgin IL 60123
(630) 670-5914

# EXHIBIT A

## DECLARATION OF GRACIELA DELA TORRE IN SUPPORT OF HER RESPONSE TO STATUS REPORT

I, Graciela Dela Torre, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct:

1. I am the Plaintiff in this action, and I make this Declaration in response to the Status Report (Dkt. 176) filed by Nippon Life Insurance Company of America ("NLI"). I submit this to provide the Court with a complete and accurate picture of what has occurred.
2. This case is my attempt to correct a wrongful denial of my disability benefits. I signed a settlement agreement in my previous lawsuit because I felt I had no other option and, critically, because I did not have all the facts.
3. After the settlement was finalized, I discovered new evidence that NLI and its vendors violated the terms of my insurance policy and governing laws. This evidence, which I have provided to NLI's counsel, could not have been discovered sooner through any reasonable diligence. Had I possessed this information during the first lawsuit, I would never have agreed to settle under those terms.
4. My good-faith efforts to resolve this were met with an offer that is not designed to settle, but to threaten and overwhelm. On [Date of Email], NLI's counsel, Justin Wax Jacobs, presented the following terms for dismissal (a true and correct copy of which is attached as Exhibit B):
   a. I must dismiss my case *with prejudice*;
   b. I must provide a signed admission that I "abused the judicial system";
   c. I must grant them access to my private ChatGPT accounts and all records regarding my use of it for this case; and
   d. I must agree to a $50,000 settlement payment to NLI, secured by a lien on my home.
5. This is not a good-faith settlement offer. It is a demand for my humiliation, financial ruin, and the surrender of my privacy. The demand for a forced confession and a lien on my home is particularly cruel and predatory.
6. The demand for access to my private accounts is especially alarming given my documented suspicions, which I have raised with Mr. Wax Jacobs multiple times, that unauthorized access to my accounts may have already occurred. His specific knowledge of certain tools only deepens this concern, a matter I have felt compelled to report to the FBI.
7. In contrast to NLI's extortionate terms, I have offered a simple, fair solution to end all of this: if NLI drops its counterclaim and the arbitration it initiated against me, I will drop all my claims against them. They have rejected this reasonable offer.
8. I understand that NLI's status report characterizes my actions as "unfeasible demands." In truth, my only demand is for a fair review of the evidence that the process leading to my benefits denial was flawed and violated my policy. An audit would not only help me but would also help NLI identify systemic issues to avoid hurting others in the future.
9. I file motions not to clutter this Court's docket, but because they are my only means to ask this Court for protection from NLI's tactics and for a chance to be heard on the truth of what was done to me.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on Sep 18, 2025

/s/ Graciela Dela Torre
**Graciela Dela Torre**
653 Wing Street
Elgin, IL 60123 (630) 670-5914

# EXHIBIT B

 

Gracie Dlt <gmestiza1@gmail.com>

## Re: Dela Torre v. Nippon Life Insurance 1:25-cv-01483 responsibility attempt to confer pursuant to Dkt 174. 009848831. 2025-01669367

**Wax Jacobs, Justin (NY)** <J-WaxJacobs@nipponlifebenefits.com>     Thu, Sep 18, 2025 at 3:24 PM
To: Gracie Dlt <gmestiza1@gmail.com>

Ms. Dela Torre,

Nippon's offer is as follows:

1) Dismiss your current Complaint against Nippon with prejudice;
2) Provide a signed admission that you abused the judicial system;
3) Provide us with access to your ChatGPT account(s) and any and all records regarding your use of ChatGPT to prosecute this lawsuit, and/or the Illinois DOI complaint;
4) Agree to a settlement payment of $50,000 to Nippon secured against your home.

Regarding your ChatGPT account, we are willing to accept printouts of all of your conversations with the chatbot regarding this lawsuit, the previous lawsuit, and the Illinois DOI/ New York DFS complaints. However, direct access to your accounts will be easier for both us and you. We would only require access for 10 days - giving us an opportunity to obtain the information we need. You can restrict our access after those 10 days. Nippon would also agree not to use your account for any purpose other than to identify and extract the information we need.

Regarding our oversight of Davies, I do not have the authority to share what we may or may not be doing.

---

**From:** Gracie Dlt <gmestiza1@gmail.com>
**Sent:** Thursday, September 18, 2025 3:48 PM
**To:** Wax Jacobs, Justin (NY) <J-WaxJacobs@nipponlifebenefits.com>; Gracie Dlt <gmestiza1@gmail.com>
**Subject:** Re: Dela Torre v. Nippon Life Insurance 1:25-cv-01483 responsibility attempt to confer pursuant to Dkt 174. 009848831. 2025-01669367

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Mr Wax Jacobs,

Please confirm that your client's position is that I must:
1. Turn over my private login credentials to you.
2. So you can pursue a $10 million claim against OpenAi.
3. While securing this endeavor with a $50,000 lien on my home. (The only thing is keeping me off the streets)
I require clarity on the legal basis of your request.

Giving my strong suspicion of previous unauthorized access to my accounts, a concerned I have raised with you twice, and your response was that neither you or your client have gain unauthorized access, however you named a specific tool, among the numerous ones that there are out there, raise serious concerns, and that is now with the FBI.

Finally, I urge your client to consider the broader benefit of exercising an audit of my case, not as a concession, but as an opportunity for Nippon to identify systemic failures in its claims process. Alerting vendors to a potential audit would serve as a powerful corrective action preventing future wrongful denials and the costly litigation that inevitably follows. This is not just in my interest, it is profoundly in Nippon's best interest to ensure its practices are Beyond reproach. this current proposal is unacceptable. I am certain your client can and must do better, as if they are set on getting $10 million dollars, they should look at their vendors and realize why Nippon is in this position in the first place.

Best.

Grace Dela Torre



Gracie Dlt <gmestiza1@gmail.com>

## Re: Dela Torre v. Nippon Life Insurance 1:25-cv-01483 responsibility attempt to confer pursuant to Dkt 174. 009848831. 2025-01669367

1 message

**Gracie Dlt** <gmestiza1@gmail.com>  Wed, Sep 17, 2025 at 11:22 AM
To: "Wax Jacobs, Justin (NY)" <J-WaxJacobs@nipponlifebenefits.com>
Cc: Gracie Dlt <gmestiza1@gmail.com>
Bcc: DOI.infodesk@illinois.gov, "dfs.sm.Consumers" <Consumers@dfs.ny.gov>

Mr wax.
I'm keeping this simple and focused on what the court asked us to do in Dkt 174 confer and try to resolve process issues. I'm not asking for benefits, I'm asking for a PSA post-settlement audit tied to the policy.
Here's what I'm proposing:
Vendor Audit + ICDR Stay + Neutral Review:
1. TP: Targeted Production 21 days.
 *Surveillance, December 1st 2021 to December 3rd 2021, full file assignment notes and the date it was inserted into my claim.
*TSA/OASYS transferable skills analysis/occupational access system, inputs, outputs, filters, wage tables, plus employer outreach logs from February 28th 2022 to May 31st 2022.
*ALLSUP: status/communications file regarding SSDI assistance.
*Offsets: month by month Ledger, including the $5,106 SSDI estimate refund authorization and any true up math, for example the period March 30th 2021 to June 29th 2021.
*ROI: Release of information logs from 2019 to 2023, including November 12th 2020 unsigned by me and sent to Dr Janovicius (rejected) on December 20, 2020 signed by me and Doctor Janovicius fulfilled, April 20, 2021 SSA 3288 and general medical, June 9, 2021 June 10, 2021 April 17, 2023 medical April 20, 2023, ATI, April 27,2023, OT/PT/Dr. Labriola/Dr. Sharma.
2. ICDR: international center for dispute resolution administrative stay 90 days or dismissal without prejudice while the audit runs.
3. NR: neutral review.
*PM&R: physical medicine and rehabilitation physician and neutral vocational reviewer relook my file with three guardrails:
*Credit my 3 month no work period after my surgery on February 28th 2022.
*Exclude using post-termination video from December 1st to 3, 2021, used to retroactively justify the termination on November 11, 2021.
*Apply offsets true-up only to income actually received SSDI = none.
* Written findings that cite the same policy anchors: NB 150 full and fair review NB 136 any occupation NB 372 regular care NB 146 CA offset true up
All of this information should be readily available as it was presented via letters in 2021 and 2022.
4. Audit integrity & Representation during the post-settlement audit i.e., the 21-day targeted production and 45-day neutral review upon and its agents including DMS / Davies also investigators and vendors will conduct no new surveillance of plaintiff and no employer outreach concerning plaintiff council will certificate this moratorium is a process safeguard only without prejudice does not reopen benefits or alter any release and automatically expires at the close of the neutral review.
5.Posture, without prejudice, no admissions.
Plus one process fix I'm asking for:
* SSA vendor reinstatement alsip or equivalent under Nippon's sponsorship, as plan practice inserted the vendor originally. This is process support only, not a benefit demand. Deliverables within 30 days: SSA status confirmation, pending task/timeline, representative of record designation.
Two quick housekeeping points:
*DFS/IC3: multiple notices went to DFS at the same time as DOI and IC3,due to suspected unauthorized access. That's a protective step only; you've stated you and your client did not access my accounts, and I am noting that here. If your client accepts my proposal I will hold off DOI/DFS in abeyance during the (30-day) audit window.
Review confirmation: please confirm in writing that my full prior submissions with enclosures have been or will be reviewed, not just today's bullet.

Sincerely,
Graciela Dela Torre
(630) 670-5914