IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GRACIELA DELA TORRE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:25-cv-01483 |
| DAVIES LIFE & HEALTH, INC., formerly known as Disability Management Services, Inc., NIPPON LIFE INSURANCE COMPANY OF AMERICA, and ALLSUP, LLC, | ) Honorable Rebecca R. Pallmeyer |
| Defendants. | ) |

**PLAINTIFF'S MOTION FOR DECLARATORY RULING: THE JOINT STIPULATION OF DISMISSAL IS INVALID FOR LACK OF PLAINTIFF'S SIGNATURE UNDER FEDERAL RULE OF CIVIL PROCEDURE 41(a)(1)(A)(ii)**

NOTICE OF LIMITED ASSISTANCE

I, Graciela Dela Torre, am a disabled person representing myself. I have filed my medical records under seal in this docket. I have fibromyalgia, cognitive impairments documented by brain MRI, and other chronic conditions. I am experiencing a fibromyalgia flare-up and extreme winter conditions. I received limited, non-legal assistance to organize the facts and format this document. Its contents were read aloud to me. I understand, approve, and adopt this filing as my own. I ask the Court to consider my disabilities and pro se status when reviewing this motion.

**STATEMENT REGARDING ERISA VIOLATIONS AND DEFENDANT'S REFUSAL TO COMMUNICATE**

Defendant Nippon Life Insurance Company of America ("NLICOA") and its counsel Justin Aaron Wax Jacobs ("JAWJ") have violated their fiduciary duties under the Employee Retirement Income Security Act of 1974 (ERISA). As an ERISA plan administrator, NLICOA owes me a duty of loyalty and a duty to act solely in the interest of plan participants. Instead, NLICOA wrongfully terminated my benefits in November 2021 using post-termination bad faith tactics including video surveillance designed to find reasons to deny rather than to administer my claim fairly.

JAWJ, as counsel for NLICOA, has refused all meaningful communication with me. Despite my repeated attempts to discuss resolution, JAWJ will not pick up the phone or respond to substantive communications. This refusal to engage violates the cooperative spirit required by the Federal Rules of Civil Procedure and leaves me, a disabled pro se litigant, with no option but to defend myself through motion practice while JAWJ files contempt motions and seeks sanctions against me. His conduct multiplies proceedings unnecessarily and forces me to expend what little energy I have fighting rather than resolving legitimate disputes.

**I. INTRODUCTION**

This motion addresses a fundamental procedural defect that undermines the entire arbitration proceeding Defendant NLICOA and its counsel JAWJ seek to enforce against me through their Motion for Contempt (Dkt. 190).

The Joint Stipulation of Dismissal with Prejudice, Dkt. 44-4, filed in Case No. 1:22-cv-07059 and attached as an exhibit in this case, purports to dismiss my underlying lawsuit. However, this stipulation is invalid because it lacks my signature as required by Federal Rule of Civil Procedure 41(a)(1)(A)(ii). The stipulation bears only the signatures of attorneys, including JAWJ for NLICOA and my former counsel, but my personal signature as the plaintiff and main party is absent.

Under the plain text of Rule 41 and binding case law, a stipulation of dismissal under Rule 41(a)(1)(A)(ii) must be signed by all parties who have appeared. Counsel's signature does not satisfy this requirement. Because the stipulation is invalid, the underlying case was never properly dismissed, and all proceedings based on that dismissal, including the arbitration that NLICOA and JAWJ now seek to enforce through contempt, rest on an invalid foundation. A castle built on sand.

## II. FACTUAL BACKGROUND: THE BENEFITS I WAS OWED AND THE SETTLEMENT THAT LEFT ME WITH NOTHING

### A. My Policy Entitled Me to Benefits Through 2043

Under the long-term disability policy issued by NLICOA, I was found disabled and eligible for monthly payments beginning June 30, 2019. Dkt. 9-3 in Case No. 1:22-cv-07059, Page 2. The official Claim Coversheet from NLICOA shows:

- Benefit Begin Date: June 30, 2019
- Benefit Termination Date: April 8, 2043
- Maximum Benefit Date: April 8, 2043
- Gross Monthly Benefit: $3,207.59

Dkt. 9-3 clearly establishes that my benefits were scheduled to continue for 24 years, from 2019 through 2043.

### B. NLICOA Wrongfully Terminated My Benefits in November 2021

In November 2021, NLICOA, through its claim administrator, determined I was no longer disabled and terminated all LTD payments. This termination was wrongful. It cut off benefits I was entitled to receive for another 22 years (2021 through 2043). NLICOA used post-termination bad faith tactics, including video surveillance, to manufacture reasons for denial rather than fulfilling its fiduciary duties under ERISA.

### C. The Settlement Value Was a Small Fraction of What I Was Owed

The Settlement Agreement (Dkt. 44-3) stated a lump sum payment of $90,000.

Calculation of Benefits Owed:

- Monthly benefit: $3,207.59
- Years of benefits wrongfully terminated: 22 years (November 2021 through April 2043)
- Total months: 22 years × 12 months = 264 months
- Gross benefits owed: 264 months × $3,207.59 = $846,803.76

The $90,000 settlement represents only 10.6% of the benefits I was owed.

But that is not what I received.

**D. My Former Attorney Took 40%, Plus Expenses, Leaving Me with Empty Hands**

My former attorney, Kevin Probst of Dabdoub Law Firm, charged me 40% of the settlement, $36,000, plus expenses. The expenses he charged me included:

- Airfare from Florida to Chicago (May 2023) when he came to meet with local counsel Ankin Law
- Rental car charges
- Meals
- Airport parking
- Fees for erroneously filing my case in the wrong district (Southern District of Florida, which had to be refiled in Illinois)
- Ankin Law attorney's fees, despite Probst's representation that they would not do any work on my case

After attorney's fees and expenses, I received less than 5.6% of the benefits I was owed.

That small amount was consumed immediately by basic living expenses and urgent medical needs. I have been left with nearly empty hands while facing multiple reconstructive surgeries.

**E. I Have Been Forced to Rely on State Aid That Only Covers Medical Emergencies**

Because NLICOA wrongfully terminated my benefits and the settlement left me with nothing, I have been forced to rely on state assistance. This aid covers only medical emergencies, not the ongoing care I need, not the reconstructive surgeries I require, not the basic stability that my disability benefits were meant to provide.

Every minute of denial is a minute of stolen life, stolen peace, and stolen economic stability.

**F. Now JAWJ and NLICOA Are Punishing Me for My Own Survival**

Despite taking my benefits, despite leaving me with nearly nothing, despite my documented disabilities and cognitive impairments, JAWJ and NLICOA now seek to hold me in contempt. They want to punish me for disclosing the settlement amount in court filings, filings I made while fighting for my survival. They want me to pay $2,750 to an arbitrator in a forum they fraudulently obtained. They want to put a $50,000 lien on my home. They want me to return the $90,000 they paid, even though my former attorney took most of it and the rest is long gone on basic survival.

They act as if my life does not matter.

### III. THE STIPULATION OF DISMISSAL IS INVALID BECAUSE I NEVER SIGNED IT

A. The Plain Text of Rule 41(a)(1)(A)(ii) Requires My Signature

Federal Rule of Civil Procedure 41(a)(1)(A)(ii) permits a plaintiff to dismiss an action without a court order by filing "a stipulation of dismissal signed by all parties who have appeared."

The rule does not say "signed by counsel" or "signed by representatives." It explicitly requires the signature of the "parties" themselves. This textual requirement is unambiguous.

I am the plaintiff. I am the main party. I appeared in the case. My signature does not appear on Dkt. 44-4.

### B. The Stipulation Bears Only Attorney Signatures

The stipulation at Dkt. 44-4 shows only the signatures of:

- Justin Wax Jacobs (counsel for NLICOA)
- Kimberly A. Jones (counsel)

- Edward Philip Dabdoub (my former counsel)
- Kevin Edward Probst (my former counsel)
- Justin Lewicky (local counsel, Ankin Law)

<u>No signature from me. No signature from any corporate officer of NLICOA.</u>

**C. Counsel's Signature Does Not Satisfy Rule 41(a)(1)(A)(ii)**

The requirement that "all parties" sign means exactly that. Counsel cannot sign for a party under this rule unless counsel has been expressly authorized to do so, and even then, the better practice, and the requirement in many jurisdictions, is for the party themselves to sign.

The Advisory Committee Notes to Rule 41 make clear that the rule was designed to provide a simple, self-executing mechanism for dismissal when all parties agree. That mechanism requires the parties' own signatures to ensure that the agreement to dismiss is genuinely theirs.

**D. Case Law Confirms That "All Parties" Means All Parties**

ASW LLC v. Bisson, No. 1:18-CV-86-TLS (N.D. Ind. 2018): "A plaintiff may voluntarily dismiss a civil action by filing a stipulation of dismissal signed by all parties who have appeared. Fed. R. Civ. P. 41(a)(1)(A)(ii). A stipulation of dismissal that meets the requirements of Rule 41(a)(1)(A)(ii) is as of right, and deprives the Court of jurisdiction when filed."

Beasley v. American Electric Power System, No. 1:21-CV-98-HAB-SLC (N.D. Ind. 2021): Rule 41(a)(1)(A)(ii) "permits a plaintiff to 'dismiss an action without a court order by filing ... a stipulation of dismissal signed by all parties who have appeared.'" The Seventh Circuit has explained that Rule 41(a) "does not speak of dismissing one claim in a suit; it speaks of dismissing 'an action', which is to say, the whole case."

Anderson-Tully Co. v. Fed. Ins. Co. , 1996 WL 467653 (6th Cir. 1996): The "plain words" of Rule 41 require that a stipulation for dismissal be signed by "all parties who have appeared." A stipulation not signed by the plaintiff does not satisfy the rule.

City of Jacksonville v. Jacksonville Hospitality Holdings, L.P. , 2023 WL 3104500 (11th Cir. 2023): "And all means all." Every party who has appeared must sign a Rule 41(a)(1)(A)(ii) stipulation.

McNamara v. Edwards, 2018 WL 4659119 (9th Cir. 2018): A stipulation is invalid where one party who appeared did not sign.

E. The Stipulation Was Filed as Self-Executing Under Rule 41(a)(1)(A)(ii), Requiring Strict Compliance

The stipulation was filed alone, not attached to any motion asking the Court to approve it under Rule 41(a)(2). It claimed to be self-executing under Rule 41(a)(1)(A)(ii). That means it had to strictly follow the rule. It did not.

My signature is missing. <u>I appeared as the main party</u>, The dismissal was not effective.
All proceedings that came after, including orders compelling arbitration based on a dismissed case, rest on an invalid foundation. A castle built on sand

### F. The Consequences of an Invalid Stipulation

A stipulation of dismissal that fails to meet Rule 41(a)(1)(A)(ii)'s requirements "has no effect." Beasley, slip op. at 2. The case remains pending.

Because the stipulation was ineffective, the underlying case (No. 1:22-cv-07059) was never properly dismissed. This Court retains jurisdiction. The arbitration that NLICOA and JAWJ seek to enforce through contempt proceedings was fraudulently obtained based on a dismissal that never legally happened.

## IV. DEFENDANT'S FIRST MATERIAL BREACH RENDERS THE AGREEMENT UNENFORCEABLE

Even if the stipulation were valid (which it is not), NLICOA and JAWJ committed the first material breach of the Settlement Agreement on January 28, 2025, months before any action by me.

### A. Section 3.6 Requires AAA Commercial Arbitration

Section 3.6 of the Settlement Agreement (Dkt. 44-3) explicitly requires:

"Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules. "

### B. JAWJ Filed in ICDR Under False Pretenses

On January 28, 2025, JAWJ filed a Demand for Arbitration with the International Centre for Dispute Resolution (ICDR), not AAA Commercial. Dkt. 44-6.

On the demand form, JAWJ marked the dispute as "International" and checked "YES" to the question about parties from different countries, stating: "Yes, Nippon is an American corporation whose parent company is a Japanese corporation." Dkt. 44-6, Page 3.

This directly contradicted JAWJ's own sworn declarations that Nippon is an Iowa corporation. Dkt. 9-1, ¶4; Dkt. 61-1, ¶4.

### C. The ICDR Filing Was a Material Breach

The forum requirement in Section 3.6 goes to the essence of the arbitration provision. By unilaterally changing the forum to ICDR under false pretenses, NLICOA and JAWJ defeated the bargained-for objective of having disputes resolved under AAA Commercial Rules.

This breach was material. It occurred on January 28, 2025, before any alleged disclosure by me.

### D. The Party Who Commits the First Material Breach Cannot Enforce the Contract

Sahadi v. Continental Illinois National Bank & Trust Co. , 706 F.2d 193, 197 (7th Cir. 1983): "It is black letter law in Illinois and elsewhere that only a 'material' breach of a contract provision by one party will justify non-performance by the other party."

Israel v. Nat'l Canada Corp. , 276 Ill. App. 3d 454, 461 (1st Dist. 1995): "A material breach of a contract provision will justify non-performance by the other party."

Hart v. Lyons, 106 Ill. App. 3d 803 (2d Dist. 1982): The party who commits the first material breach cannot later enforce the contract.

NLICOA and JAWJ breached first. They cannot now enforce the Agreement against me.

## V. THE SETTLEMENT AGREEMENT PERMITS DISCLOSURE TO REGULATORY AGENCIES

Section 4 of the Settlement Agreement expressly permits disclosures "as required by law" and disclosures made pursuant to "regulatory order" or "court order" or "if necessary to enforce or implement the terms of this Agreement."

The Illinois Department of Insurance is a regulatory agency. This federal court is a court of law. My filings with both were protected.

## VI. THE HUMAN COST OF DEFENDANT'S CONDUCT

I have been disabled since 2019. I have documented cognitive impairments from an abnormal brain MRI. I have fibromyalgia and chronic pain. I need reconstructive surgeries I cannot afford.

My former attorney took 40%+ of my settlement plus expenses, leaving me with less than 5.6% of the benefits I was owed. I have been forced to rely on state aid that covers only medical emergencies, not the ongoing care I need.

Now NLICOA and JAWJ want to punish me for fighting to survive. They want me to pay $2,750 to an arbitrator in a forum they fraudulently obtained. They want to put a $50,000 lien on my home. They want me to return money that is long gone on basic necessities. They seek to hold me in contempt for disclosing information under protected activities pursuant to the settlement in court filings, filings I made while pro se, while disabled, while fighting for my life. Even the settlement itself appears to be invalid.

Every minute of denial is a minute of stolen life, stolen peace, and stolen economic stability. My life matters. My survival matters. The Court should see this for what it is: an insurance company and its counsel trying to crush a disabled woman who dared to fight back.

## VII. CONCLUSION AND REQUEST FOR RELIEF

For these reasons, I respectfully request that the Court:

- DECLARE that the Joint Stipulation of Dismissal (Dkt. 44-4) is invalid under Federal Rule of Civil Procedure 41(a)(1)(A)(ii) because I never signed it, and all proceedings based on the dismissal of Case No. 1:22-cv-07059 are void.
- DECLARE that counsel's signature alone does not satisfy Rule 41(a)(1)(A)(ii)'s requirement that "all parties who have appeared" must sign.
- DECLARE that Graciela Dela torre, is the main party that appeared in this claim
- DECLARE that NLICOA and JAWJ committed the first material breach of the Settlement Agreement on January 28, 2025, by filing in ICDR in violation of Section 3.6.
- DECLARE that under Illinois law, NLICOA and JAWJ's first material breach discharges any obligations I might have had under the Agreement.

- DECLARE that my disclosures to the Illinois Department of Insurance and this federal court were permitted under Section 4's exceptions.
- DENY Defendant's Motion for Contempt (Dkt. 190) in its entirety.
- ORDER that Defendant's $10 million counterclaim (Dkt. 139) is DISMISSED with prejudice as barred by the release in Section 2.2 of the Settlement Agreement, and Defendant is ESTOPPED from asserting claims arising from the same subject matter.
- DECLARE that the safe harbour was properly served as attached in embedded exhibit P shows.
- IMPOSE SANCTIONS against NLICOA and JAWJ for fraud upon the court and bad faith conduct.
- GRANT such other relief as the Court deems just and proper.

**VIII. VERIFICATION**

I, Graciela Dela Torre, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge and belief, based on my personal knowledge and review of the exhibits quoted herein.

Executed on March 1, 2026.

/s/ Graciela Dela Torre
Graciela Dela Torre, Pro Se
653 Wing Street
Elgin, IL 60123
(630) 670-5914
gmestiza1@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2026, a true and correct copy of the foregoing was submitted via pro se box which will send a copy to all counsel of record.

/s/ Graciela Dela Torre
Graciela Dela Torre

## Exhibit P (Safe Harbour)

Nippon Life Insurance Company of America v. Graciela Dela Torre - Case 01-25-0000-4189**NOTICE OF MATERIAL BREACH OF SETTLEMENT AGREEMENT §3.6 AND FRAUDULENT INDUCEMENT OF ICDR JURISDICTION IN CASE 01-25-0000-4189**

1 message

Gracie Dlt <gmestiza1@gmail.com> Mon, Feb 2, 2026 at 5:55 AM
To: ICDR Sabriyah Samsudeen <SabriyahSamsudeen@adr.org>, Damian Vallejo <dvallejo@dvmlaw.com>
Cc: "Wax Jacobs, Justin (NY)" <J-WaxJacobs@nipponlifebenefits.com>, Case Filing <CaseFiling@adr.org>, ICDRCaseFiling@adr.org

VIA EMAIL+ELECTRONIC FILING & EMAIL

TO: Justin Wax Jacobs, Esq.

Counsel for Nippon Life Insurance Company of America

j-waxjacobs@nipponlifebenefits.com

TO: American Arbitration Association

Case Administrator, Case No. 01-25-0005-7312

CaseFiling@adr.org

TO: International Centre for Dispute Resolution

Case Administrator

ICDR Sabriyah Samsudeen <SabriyahSamsudeen@adr.org>

**DATE: February 02, 2026**

RE: NOTICE OF MATERIAL BREACH OF SETTLEMENT AGREEMENT §3.6 AND FRAUDULENT INDUCEMENT OF ICDR JURISDICTION IN CASE 01-25-0000-4189

**1. NOTICE OF BREACH.**

This letter constitutes formal notice that Nippon Life Insurance Company of America ("Nippon" NLICOA") is in material breach of Section 3.6 of the Settlement Agreement executed January 2, 2024. That section unambiguously requires arbitration under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). Nippon's filing of a demand with the International Centre for Dispute Resolution ("ICDR") (Case No. 01-25-0000-4189) is a direct violation of this contractual term.

**2. NOTICE OF FRAUDULENT INDUCEMENT.**

The ICDR's jurisdiction was fraudulently induced by Nippon's counsel, Justin Wax Jacobs. In the ICDR filing, Mr. Wax Jacobs represented the dispute as "international." This representation is directly contradicted by his own prior sworn declaration to the United States District Court for the Northern District of Illinois, in which he attested under penalty of perjury that "Nippon is an insurance company incorporated in the State of Iowa with its principal place of business in New York, New York." (See Dela Torre v. Nippon, 1:22-cv-07059, Docket 9-1, p.4). A domestic corporation cannot create an "international" dispute for purposes of forum selection. This misrepresentation appears designed to trigger a forum that is (a) non-contractual, and (b) exponentially more costly, thereby burdening a pro se litigant. TO ADD INJURY TO THE INSULT, Nippon/NLICOA accused the ICDR case administrator, Sabriyah Samsudeen of unilaterally choosing ICDR see 1:25-cv-01483 Dkt. 191 page 5 of 12.

**3. DEMAND FOR CURE.**

You are hereby directed to immediately withdraw the improperly initiated ICDR proceeding (01-25-0000-4189) and to bear all costs associated with its filing. The only proper forum is the pending AAA Commercial arbitration (01-25-0005-7312).

**4. RESERVATION OF RIGHTS.**

All rights are expressly reserved, including but not limited to the right to seek: (a) sanctions in the AAA proceeding for this bad-faith breach; (b) dismissal of any contempt or enforcement motion predicated on the invalid ICDR proceeding; (c) attorney disciplinary action for misrepresentation; and (d) any and all other remedies available at law or in equity.

Sincerely,

Graciela Dela Torre, Pro Se

On Tue, Jan 13, 2026 at 4:25 AM Gracie Dlt <gmestiza1@gmail.com> wrote:

To: Sabriyah Samsudeen, ICDR Case Administrator

CC: AAA Office of Ethics & Compliance, Legal Department

From: Graciela Dela Torre

Dear Ms. Samsudeen,

I am writing to formally notify you of fraudulent misrepresentations made by Nippon Life Insurance Company of America's counsel, Justin Wax Jacobs, which improperly triggered the assignment of this matter to the ICDR.

1. Fraudulent Triggering of ICDR Jurisdiction:

In Docket No. 191, ⁋13 (Case No. 1:25-cv-01483), Mr. Wax Jacobs claims You "unilaterally assigned" this case to the ICDR because "NIPPON's parent company is Japanese."

This is false. In his sworn Declaration under penalty of perjury (1:22-cv-07059, Docket 9-1, ⁋4), Mr. Wax Jacobs attested:

"Nippon is an insurance company incorporated in the State of Iowa with its principal place of business located in New York, New York."

This confirms the dispute is domestic. His later representation in the AAA Demand form was a deliberate misrepresentation to trigger the more costly and improper ICDR forum.

2. The ICDR Case is Suspended – But the Fraud Remains:

I note that the ICDR case is currently suspended until February 12, 2026, at Mr. Wax Jacobs's request. However, this does not cure the underlying fraud. The suspension does not erase the fact that the ICDR was improperly invoked through deceit.

3. No Breach of Confidentiality:

No breaching confidentiality is present here by disclosing that I was misled into a $90,000 settlement after being told by a former co-worker that Nippon had awarded me $6,000,000. Disclosing this fraud is not a breach of confidentiality, it is a protected disclosure of misconduct.

4. Demand for Documentation & Action:

I hereby demand that the ICDR:

Provide the original, unaltered email referenced as Exhibit D in Docket 191-5;

Confirm in writing that the case was assigned to the ICDR based solely on Mr. Wax Jacobs's representation that the dispute was "international"; and

Issue a written finding that the assignment was fraudulently induced, and that any future proceedings must be conducted under AAA Commercial Rules as required by the parties' Settlement Agreement §3.6.

**5. Notice to Justin Wax Jacobs:**

This email serves as formal notice that your fraudulent triggering of the ICDR, harassment via surveillance and private investigators, and abusive litigation tactics will no longer be tolerated.

I demand that you:

Formally withdraw the fraudulent ICDR filing and acknowledge the assignment was improper;

File an unopose reopening of the federal case in the Northern District of Illinois so that the merits may be heard in a proper forum; and

Cease all harassing conduct, Stop gathering photos of me, that is beyond WEIRD! return all photos of me in your possession, including surveillance, Stop frivolous contempt motions, and coercive "settlement" demands.

Failure to comply will result in the filing of:

Updated and expanded Attorney misconduct complaints with the Illinois ARDC and New York and New Jersey State Bar;

A federal lawsuit for fraud, abuse of process, and harassment; and

A motion for sanctions under FRCP 11 and 28 U.S.C. § 1927.

The ICDR must not be weaponized as a tool for harassing disabled pro se litigants. I expect your prompt response and corrective action.

To Case Filing: File the entire attached documents plus this email into the docket.

Sincerely,

Graciela Dela Torre

Pro Se Plaintiff

653 Wing Street, Elgin, IL 60123

(630) 670-5914 | gmestiza1@gmail.com

On Mon, Dec 15, 2025 at 10:00 AM Damian Vallejo <dvallejo@dvmlaw.com> wrote:

Dear Parties,

I refer to the below requests from Respondent, which are hereby denied. As stated in my December 9, 2025, email, the arbitration is currently suspended until February 12, 2026. If the suspension is lifted, a

first procedural conference will be scheduled and a procedural timetable will be established, providing

both parties the opportunity to submit their respective positions and evidence.

Kind regards,

Damian Vallejo

Sole Arbitrator"